**STATE OF OHIO** ex rel. **William J. BROWN,** Attorney General of the State of Ohio, Plaintiff-Appellant,

v.

**Howard H. CALLAWAY,** Secretary of the Army, et al., Defendants-Appellees.

Nos. 73-2119 to 73-2121.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1974.

Decided June 6, 1974.

William S. Fein, Asst. Atty. Gen., Columbus, Ohio, for plaintiff-appellant; William J. Brown, Atty. Gen. of Ohio, Columbus, Ohio, on brief.

Irwin L. Schroeder, Dept. of Justice, Washington, D. C., for defendants-appellees.

Charles G. Heyd, Louis F. Gilligan, Cincinnati, Ohio, for intervening plaintiffs-appellants; Bauer, Morelli & Heyd, Cincinnati, Ohio, on brief.

Roger L. Sabo, Columbus, Ohio, for intervening defendants-appellants; Knepper, White, Richards & Miller by John A. Jenkins, Columbus, Ohio, on brief.

Before WEICK and McCREE, Circuit Judges, and CONTIE,* U. S. District Judge.

McCREE, Circuit Judge.

This appeal requires us to decide whether the district court erred in refusing to enjoin all construction of two reservoir projects because the Environmental Impact Statements filed by appellees failed to meet the requirements of Section 102 of the National Environmental Policy Act, 42 U.S.C. § 4332,[1]

---

* The Honorable Leroy J. Contie, Jr., U. S. District Judge for the Northern District of Ohio, sitting by designation.

1. That section provides:

The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

(A) utilize a systematic, interdisciplinary approach which will insure the integrated use of the natural and social sciences and the environmental design arts in planning and in decision-making which may have an impact on man's environment;

(B) identify and develop methods and procedures, in consultation with the Coun-

cil on Environmental Quality established by subchapter II of this chapter, which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decision-making along with economic and technical considerations;

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local

and whether the district court erred in refusing to permit certain conservation groups, certain property owners affected by the projects, and the Ohio Contractors Association to intervene. We hold that the district court did not abuse its discretion when its injunction permitted limited construction to proceed despite appellees' failure to file sufficient Environmental Impact Statements, but determine that the conservation groups, landowners, and the Ohio Contractors Association are entitled to intervene as of right.

In 1938 the United States Congress authorized construction of flood control reservoirs in the Ohio River basin. Flood Control Act of June 28, 1938, 52 Stat. 1215 (1938), 33 U.S.C. § 701a et seq. Among the reservoirs authorized, are the two challenged in this appeal: the Caesar Creek Lake Project in Warren County, Ohio, and the East Fork Reservoir Project in Clermont County, Ohio. In 1962 the economic feasibility of these projects was reconsidered, and, after a favorable evaluation, funds were appropriated by Congress for preparation of detailed plans. Land acquisition for the projects began in 1967 and is now nearly completed.

The projects were originally authorized as flood control measures, but when this action was filed, the flood control aspects accounted for less than fifty percent of the annual benefits expected to result. The works are also expected to improve water supply and quality, to provide recreational facilities, and to promote economic development. Recreational considerations alone account for approximately forty percent of the anticipated Caesar Creek benefits and forty-five percent of the expectation from the East Fork project.

After land acquisition had begun but before construction had commenced, the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., became effective. In accordance with Section 102 of the Act, 42 U.S.C. § 4332, the Corps of Engineers for the United States Army, on October 9, 1970, circulated to state and federal agencies for comment, draft Environmental Impact Statements (EIS) for both the Caesar Creek and East Fork Projects. Both drafts were also made available to the public for comment. In response to the requests for comments, the Ohio Department of Natural Resources indicated by letter, dated November 23, 1970, that it approved the draft statements concerning both projects. Thereafter, the Corps prepared and filed with the Council on Environmental Quality a seven page final EIS

short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes;

(D) study, develop, and describe appropriate alternatives to recommended cours-

es of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources;

(E) recognize the worldwide and long-range character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolution, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment;

(F) make available to States, counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment;

(G) initiate and utilize ecological information in the planning and development of resource-oriented projects; and

(H) assist the Council on Environmental Quality established by subchapter II of this chapter.

on Caesar Creek and a final five page statement on the East Fork Project. The latter document was subsequently supplemented by a twenty-one page statement about the anticipated quality of the water to be impounded in the East Fork reservoir.

On August 30, 1971, the Corps began construction on the Caesar Creek Project. This project, which is scheduled for completion in December 1975, consists of an earth and rock dam across the Caesar Creek Valley three miles above the confluence of Caesar Creek and the Little Miami River. The project also includes four saddle dams and a separate spillway that will be cut through the valley wall. When completed, the Caesar Creek Project will create a large slack-water pool of fluctuating dimensions which will inundate up to seventeen and one-half miles of the Caesar Creek Valley.

Construction of the East Fork Project had already begun on May 16, 1970. This project, which is scheduled for completion in December 1976, consists of a similar earth and rock dam located twenty-one miles above the East Fork's confluence with the Little Miami River. A saddle dam and concrete-lined spillway are its other major features.

Each project, intended to convert a free-flowing stream into an impounding lake behind a dam and spillway, requires the stripping of land, the excavation of approximately 11,000 acres of topsoil and subsoil, the destruction of wildlife habitat, the construction of coffer dams and work roads, the siltation of streams, the flooding of substantial areas of land and other significant alteration of the environment. Each project is also expected to have a substantial impact on traffic, land use, and local development.

Affidavits submitted to the district court indicate that the amount of money not yet expended on both projects exceeds $50,000,000 and that over fifty percent of the money already expended is attributable to land purchase expenses that are recoverable. The estimated cost of suspending or terminating the projects, including restoration of the environment to its natural condition where possible, is $250,000 per project, less than one percent of the amount unexpended.

On July 19, 1973, the State of Ohio, believing that the environment of the project areas would be adversely affected if the projects should continue, initiated an action [2] in the district court for declaratory, injunctive, and other appropriate relief. The complaint alleged that the Corps, by beginning construction of the projects without filing sufficient Environmental Impact Statements, had violated the National Environmental Policy Act (NEPA). It also alleged that the Corps had violated the Flood Control Act of 1938, 33 U.S.C. § 701a, the Water Supply Act of 1958, 43 U.S.C. § 390b, the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 et seq., the Environmental Quality Improvement Act of 1970, 42 U.S.C. § 4371 et seq., the Fish and Wildlife Coordination Act, 16 U.S.C. § 661 et seq., and Wild and Scenic Rivers Act, 16 U.S.C. § 1271 et seq.

On the same day, July 19, 1973, certain conservation groups [3] and property owners whose land is unquestionably affected by the projects filed motions to intervene as plaintiffs. They sought intervention as of right pursuant to Rule 24(a)(1) of the Federal Rules of Civil Procedure and 33 U.S.C. § 1365(b)(1)(B), and Rule 24(a)(2), and by permission pursuant to Rule 24(b). On August 10, the Ohio Contractors As-

---

2. The State of Ohio filed two nearly identical complaints in federal district court, one challenging the legality of the Caesar Creek Lake Project and the other, the East Fork Project. The district court consolidated the cases for all purposes, and the appeals from the order of the district court denying in part the injunctive relief requested in both cases are similarly considered here.

3. These conservation groups who sought to intervene in both cases are: Sierra Club, National Audubon Society, Little Miami, Inc., Rivers Unlimited, Southwestern Ohio Sportsmen's Club, Ohio Waste Watchers Inc., and Caesar Creek Preservation Association.

sociation filed a motion to intervene, as of right or by permission, on the side of the Corps.

In the meantime, the district court on July 24, 1973, had granted a temporary restraining order enjoining further work on the projects and had "tentatively granted" the motions to intervene filed by the property owners and by the conservation groups. The subsequent motion filed by the Contractors Association was also "tentatively granted."

Thereafter, the district court[4] conducted a hearing to determine whether a preliminary injunction should issue against the Corps, and whether the motions to intervene should be granted. On August 24, the district court issued an opinion and order granting only part of the injunctive relief requested. The district court found that the Environmental Impact Statements filed by the Corps did not comply with the requirements of the NEPA, that the future contracts would have a substantial impact on the environment, and that the environmental damage incident to the execution of contracts awarded had already occurred but that completion of these contracts "will not significantly damage or otherwise affect the environment . . . ." Accordingly, the court ordered the Corps to comply with Section 102 of the NEPA by submitting adequate Environmental Impact Statements; enjoined the Corps from "exe-

cuting additional contracts on either of said projects; from clearcutting trees, from removal of brush and groundcover, from stripping away and destruction of topsoil, from relocating and closing roads, and from any other construction activity which would alter the natural environment of the project area." At the same time, however, the district court permitted the completion of specific phases of the contracts already awarded by the Corps and also permitted the Corps to continue land acquisition for the projects.

On August 31, the district court issued an order denying all motions to intervene either as of right or permissively. It found that because it had reserved judgment on the merits of Ohio's allegation that the Corps was violating the Federal Water Pollution Control Act, the Act was "not involved at this time in this matter," and that, accordingly, movants could not avail themselves of the unconditional right to intervene conferred by that statute. Moreover, the movants could not intervene as of right under Rule 24(a)(2) or permissively because their interests were adequately represented by existing parties. The court did, however, welcome their participation as *amici curiae*.

After entry of the preliminary injunction, Ohio filed a Motion for Clarification and a Motion to Alter or Amend Judgment on August 27, 1973.[5] Before

4. The cases were originally assigned to the Honorable Timothy S. Hogan who consolidated them and, on July 24, 1973, issued a temporary restraining order halting all constructions pending a hearing on the application for a preliminary injunction on August 13. On that day, Judge Hogan recused himself, and the Honorable Carl B. Rubin heard the application the next day. It is from his partial denial of the preliminary injunction on August 24 that these appeals are taken.

5. On August 31, 1973, Judge Rubin indicated in chambers to the parties that he would not enjoin the completion of the phases of construction now challenged by the State of Ohio. Accordingly, the State withdrew its motion, with the court's consent, in order to prosecute this appeal. On September 7, 1973, the Honorable John W. Peck of this court granted an injunction prohibiting all major construction pending this appeal. On

September 11, Judge Peck vacated his order and adopted Judge Rubin's Supplementary Order that had been issued on September 7.

We have been informed by the State of Ohio, in its brief, that during the pendency of this appeal major construction of the projects has continued and that it has been requested to approve a stream bank stabilization operation downstream of the Caesar Creek Project necessitated by the rapid erosion of the stream bank caused by the flow of a diverted stream coming out of a diversion conduit. In addition, counsel for the State has informed the court that he was notified that during the week of November 26, 1973, several miles of land were flooded by water impounded behind a coffer dam that the district court permitted to be built at Caesar Creek. These developments should, of course, be brought to the attention of the district court.

ruling on these motions, the district court personally inspected the project sites and, on September 7, 1963, issued a Supplementary Order which identified specifically the phases of the contracts that could be performed by the Corps. On the same day, Ohio filed an appeal from the partial denial of the preliminary injunction sought.

In this appeal, Ohio contends not that the district court abused its discretion in refusing to enjoin all activities relating to the two projects, but that the district court, having determined that the Corps had not complied with the NEPA by its failure to file adequate Environmental Impact Statements, had no discretion to exercise and was therefore required to issue the injunction requested.

We hold that this contention is without merit. The NEPA has been construed not to require the immediate cessation of all work commenced before an EIS was determined to be inadequate. Environmental Defense Fund, Inc. v. Froehlke, 348 F.Supp. 338 (W.D.Mo. 1972), aff'd 477 F.2d 1033 (8th Cir. 1973). Thus, for example, this court in Environmental Defense Fund v. Tennessee Valley Authority, 468 F.2d 1164 (6th Cir. 1972), approved the issuance of a preliminary injunction that excepted road surfacing on sites already cleared and permitted the continuation of survey and mapping activities although an adequate EIS had not been filed. In Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1971), the court reversed the denial of a preliminary injunction in a highway construction project for which an adequate EIS had not been filed but permitted land acquisition to continue in hardship cases. Finally, in Environmental Defense Fund Inc. v. Froehlke, *supra*, the court of appeals affirmed a preliminary injunction that permitted certain phases of the construction of a reservoir project to continue while an EIS was being prepared. *See also* Environ-

mental Defense Fund, Inc. v. Armstrong, 352 F.Supp. 50 (N.D.Cal.1972), supplemental environmental statement upheld 356 F.Supp. 131, aff'd 487 F.2d 814 (9th Cir. 1973), Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D.C. 393, 463 F.2d 796 (1971), Cape Henry Bird Club v. Laird, 359 F. Supp. 404 (W.D.Va.), aff'd 484 F.2d 453 (4th Cir. 1973), Lee v. Resor, 348 F. Supp. 389 (M.D.Fla.1972).

It is clear, therefore, that the determination that an EIS is inadequate does not divest a court of discretion to permit specified further project activity. Instead, "general principles of equity are applicable and . . . application of those principles . . . controls the exercise of the Court's discretion under the circumstances." Environmental Defense Fund v. Froehlke, 348 F.Supp. 338, 356 (W.D.Mo.1972), aff'd 477 F.2d 1033 (8th Cir. 1973). Our review is therefore limited to determining whether the district court abused its discretion under traditional principles of equity, in denying part of the relief requested by appellant. *E. g.*, Environmental Defense Fund v. Froehlke, *supra*, Scherr v. Volpe, 466 F.2d 1027 (7th Cir. 1972).

We recognize the importance of Section 102 of the NEPA to preserving our threatened environment, and we are mindful of its prescription that prior to committing resources to a project that is likely to have significant impact on the environment, the federal agency proposing it must prepare a "detailed statement" analyzing those environmental effects and the feasibility of alternative project designs to achieve the same purpose. The draft EIS that emerges is required to be circulated among all interested agencies and to agencies possessing a measure of expertise in any environmental problem raised by the project. The opinions and comments requested are then returned to the agency proposing the project to enable it to prepare an informed Environmental Impact State-

On December 21, 1973, the Corps of Engineers issued and circulated for comment an apparently complete draft impact statement on each of the two projects at issue. Each

of the drafts contains approximately one hundred pages of text and two hundred pages of technical exhibits.

ment. The final EIS is a basic document for planning any project that may have a substantial impact on the environment. The filing of a complete EIS is not a formality but a step that is critical to the proper evaluation of environmental factors. Environmental Defense Fund v. Tennessee Valley Authority, *supra*.

The district court, in formulating the preliminary injunction challenged, properly considered whether appellant had established the four prerequisites for the equitable relief requested: (1) that a substantial question is at issue; (2) that there is a possibility of success on the merits; (3) that a balancing of injuries to the parties requires preliminary injunctive relief; and (4) that the public interest would be served by such preliminary relief. Environmental Defense Fund v. Tennessee Valley Authority, *supra*, Sierra Club v. Hickel, 433 F.2d 24 (9th Cir. 1970), aff'd sub nom., Sierra v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The district court found that the failure of the Corps to file adequate Environmental Impact Statements was a substantial issue and that it was certain that appellant would succeed on the merits of this limited issue. It found, however, that appellant had not established that it was likely to succeed in compelling abandonment of the project. In balancing the consequences to all interested parties that would result from granting or denying the relief requested, the district court determined that if the relief requested were granted, the interests of the three contractors who have already been engaged to participate in

the construction of the projects would be substantially harmed because they had already committed their resources, both human and material, to the projects. On the other hand, the court found that if these three contractors were permitted to continue construction the environment would not be significantly impaired. Under the circumstances, the court concluded that the public interest would not be served by restraining these three contractors from performing their contracts. Thus, in formulating relief, the court permitted execution of these three contracts but prohibited appellees from clearcutting trees, from removing brush and ground cover, from stripping away and destroying topsoil, from relocating and closing roads, and from engaging in any other construction activity that would significantly or irreparably alter the natural environment of the project areas. We cannot say that the district court, in tailoring the relief granted to the particular circumstances of this case, abused its discretion. Accordingly, we affirm that order.

*The Motions to Intervene*

All of the applicants for intervention alleged before the district court that they were entitled to intervene as of right under Rule 24(a)(1) and Rule 24(a)(2), and as a matter of the court's discretion under Rule 24(b).[6] The district court, in denying the motion to intervene under Rule 24(a)(1), held that neither the property owners, nor the conservation groups, nor the Ohio Contractors Association had an unconditional right to intervene in the main action because "any discussion of a reservoir

---

6. Rule 24 of the Federal Rules of Civil Procedure provides, in relevant part:
   Intervention of Right.
   (a) Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect

that interest, unless the applicant's interest is adequately represented by existing parties.
   (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

not already in existence, and therefore not able to meet any existing Ohio water quality control standards, is at best speculative and not before the Court at this time."

■ We believe, however, that 33 U.S.C. § 1365(b)(1)(B) confers upon all applicants an unconditional right to intervene under Rule 24(a)(1), and therefore reverse the district court's order denying intervention.

In its action for declaratory and injunctive relief, the State of Ohio alleged that appellees' action of impounding waters in the challenged projects would violate water qualify standards imposed by the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251 et seq., and that appellees had violated the same Act by their failure to obtain a determination from the Administrator of the United States Environmental Protection Agency of the need for, value of, and impact of water storage for water quality control as required by 33 U.S.C. § 1252(b). That subsection provides, in relevant part:

(b) (1) In the survey or planning of any reservoir by the Corps of Engineers, . . . consideration shall be given to inclusion of storage for regulation of streamflow, except that any such storage and water releases shall not be provided as a substitute for adequate treatment or other methods of controlling waste at the source.

(2) The need for and the value of storage for regulation of streamflow (other than for water quality) including but not limited to navigation, salt water intrusion, recreation, esthetics, and fish and wildlife, shall be determined by the Corps of Engineers

. . . .

(3) The need for, the value of, and the impact of, storage for water quality control shall be determined by the Administrator, and his views upon these matters shall be set forth in any report or presentation to Congress proposing authorization or construction of any reservoir including such storage.

We believe that the failure of the Corps to obtain the determination from the Administrator required by 33 U.S.C. § 1252(b)(3) is not, as the court determined, "speculative". Moreover, we are reluctant to prohibit persons from challenging expected violations of water quality standards until reservoirs are actually constructed if it is alleged that the present plan for construction will necessarily cause such a violation.

As we have previously noted, the Federal Water Pollution Control Act confers an unconditional right to intervene upon any citizen in an action brought by a state to enforce the Act. Section 1365(b)(1)(B) of Title 33 provides:

No action may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States . . . to require compliance with the standard, limitation, or order, but in any such action in a court of the United States *any citizen may intervene as a matter of right.* (Emphasis added.)

Citizen is defined by the Act as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). Moreover, Congress has explained that "citizen" should be interpreted in light of the Supreme Court's decision in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), where the Court held that persons, or associations of persons, have the requisite interest to seek review if they allege that they have been or will be harmed by the challenged action. 1972 U.S.Code Cong. and Admin.News p. 3823. There is no question that the property owners have an interest sufficient to confer standing upon them because they have alleged that they own real property that is subject to condemnation for the projects by the United States. The conservation groups have alleged that their members use and enjoy the property that will be adversely affected by the projects and therefore have standing to maintain their action. The Ohio Contractors Association has

alleged that its ability to collect dues from its members is dependent upon the amount of construction work that they are able to obtain, and that some of its members are contractors who are directly affected by the relief sought in the main action. Although we question whether the Association's interest in collecting dues is an interest sufficient to permit intervention, we believe that the interest of certain of its members to proceed without delay to complete their contracts with the Corps gives it standing.

Accordingly, we hold that the district court erred in denying the motions for intervention under Rule 24(a)(1), and, in view of our disposition, we need not decide whether these movants should have been permitted to intervene as of right under Rule 24(a)(2) or permissively under Rule 24(b).

Affirmed in part, reversed in part, and remanded for further proceedings.