**SAVE GREERS FERRY LAKE, INC., An Arkansas Not-For-Profit Corporation, Plaintiff,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS; Colonel Thomas A. Holden, Jr., District Engineer; Brig. Gen. Edwin J. Arnold, Division Commander, U.S. Corps of Engineers; Lt. Gen. Joseph N. Ballard, Chief of Engineers, U.S. Army Corps of Engineers; Joseph Westphal, Assistant Secretary (Civil Works), U.S. Department of the Army; and Louis Caldera, Secretary of the United States Department of the Army Defendants**

**No. 1:00-CV-051-WRW.**

United States District Court, E.D. Arkansas, Northern Division.

July 31, 2000.

United States Army Corps of Engineers, Colonel Thomas A Holden, Jr, Brigadier General Edwin J Arnold, Lt. Gen. Joseph N Ballard, Joseph Westphal, Louis Caldera, defendants.

Jim L. Julian, Mark Wilson Hodge, Chisenhall, Nestrud & Julian, P.A., Little Rock, AR, for intervenors and movants.

## AMENDED AND SUBSTITUTE ORDER

WILSON, District Judge.

Pending is the First Amended Motion for Intervention (Doc.#31) filed on behalf of the following individuals: John E. Allen, Richard E. Atkins, Paul E. Barley, Gene Rudd, Charles Purtle, Joe Coe, Neil Beinsenstein, Michael Biggs, Barry Kincl, James Amos, William Payne, Samuel Boellner, James Bolhuis, William Avrett, Bill Hebert, Timothy Henwood, Gene Cutrell, Stacy Schmidt, Wesley Harris, Chuck Case, S.C. Cooke, Carol Fink, Bob Pittman, John Reaves, Bill Julian, Shelby Moore, Edmund Massey, Kenneth Nadeau, John Gillenwater, Jim Gowen, Jim Hale, Cecil Roberts, Michael Stuart, Clement Valys, Jim Wallis, Larry Jolley, and John Olsen[1]. Plaintiff, Save Greers Ferry Lake, Inc., has responded to petitioners' Motion to Intervene with a Motion to Dismiss the Motion to Intervene (Doc.#29). For the reasons set forth below, the petitioners' motion to intervene is GRANTED, but only for the limited purpose of appealing. Plaintiff's Motion to Dismiss the Motion to Intervene is, accordingly, DENIED.

## FACTUAL BACKGROUND

The United States Corps of Engineers ("the Corps") is responsible for establishing and maintaining shoreline management programs at Greers Ferry Lake, Arkansas. The Corps does this by periodically implementing Shoreline Management Plans ("SMP" or "plan"). Each SMP basically consists of a map of the lake which

Richard H. Mays, Little Rock, AR, for Save Greers Ferry Lake, Inc., plaintiff.

Richard M. Pence, Jr., U.S. Attorney's Office, Eastern District of Arkansas, Little Rock, AR, for Department of Defense,

1. These individuals will be referred to collectively as "petitioners."

indicates which portions of the shoreline are open or closed to specific activities and facilities. The shoreline at Greers Ferry Lake has four categories of use: (1) limited development[2]; (2) public recreation; (3) protected shoreline; and (4) prohibited access.

Some portions of the SMPs are implemented through the use of permits. For example, to install a boat dock, one must have their property zoned "limited development," and then must apply for and receive a boat dock permit.

On October 16, 1998, the Operations Manager at Greers Ferry Lake made a written request for a review of the lake's SMP, and the Corps' District Engineer approved the request on November 13, 1998. Early in the review process, the Corps informed the public that it would accept reallocation or rezoning requests until April 1, 1999. The Corps developed criteria to evaluate each rezoning request, and by the April 1, 1999 deadline, 123 requests had been received. The Corps' district personnel evaluated the 123 requests before holding a public workshop on June 15, 1999, where the evaluations were made public.

During that same workshop, the Corps gave notice of a 30-day comment period during which the public would be allowed to propose changes to the lake's SMP. By the time the comment period closed on July 15, 1999, two major areas of concern had been identified: (1) the additional zones for private and community boat docks; and (2) demands for a relaxation of the Corps' mowing restrictions.

After roughly two years of public meetings, considering substantial public comment, and keeping the public informed about the changes it was considering, the Corps drafted four alternative SMPs, and paid a private firm to conduct an environmental impact study on each of the options. The Corps then considered that study, along with the public comments, and chose Alternative #2 -- a plan that, among other things, allowed for more boat docks on the lake.

The Corps approved its 2000 SMP on March 14, 2000. Plaintiff, Save Greers Ferry Lake, Incorporated, brought suit on April 12, 2000, alleging that the Corps had adopted the plan in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-71. Eight days later, on April 20, 2000, the plaintiff requested a Preliminary Injunction to prevent further implementation of the plan.

Two hearings were held before the plaintiff's Preliminary Injunction Motion was granted on May 30, 2000. On June 9, 2000, petitioners, as dock permit holders, moved to intervene.

## ANALYSIS

NEPA, among other things, requires government agencies like the Corps to determine whether "major" proposed changes to government property might result in federal actions that "significantly" affect the environment. See 40 C.F.R. § 1502; 33 C.F.R. § 230.6 If an agency determines that proposed changes may cause significant damage to the environment, NEPA requires that the agency conduct a large-scale environmental study before the proposed changes are undertaken.[3]

Preliminary Injunction hearings were held in this case on May 25, 2000, and May 30, 2000. In deciding whether to grant the injunction, this Court could only consider the Corps' administrative record, but within that comprehensive record were the results of the environmental study which the private firm conducted for the Corps before the 2000 SMP was selected. That study's final results were published as an Environmental Assessment ("EA").

---

**2.** Boat docks are allowed only in "limited development" areas.

**3.** The final form of this study is called an Environmental Impact Statement.

The EA examined 13 areas for each of the four proposed SMPs.[4] In some of the 13 areas tested, the EA indicated that there would be no consequences; for many of the key areas, however, the EA concluded that if the Corps implemented Alternative plan # 2, which it did, there would be "long-term adverse impacts" to the lake's: (1) highly erodible soils, (2) surface water quality, (3) wetlands, (4) aquatic resources, (5) vegetation, (6) wildlife, and (7) recreation.[5]

After two hearings and a study of the entire administrative record, the Court concluded that the Corps had implemented its 2000 SMP by improperly relying upon semantics, i.e., the Environmental Assessment concluded that there would be "long-term adverse effects" in nearly every environmental category studied, but never actually used NEPA's trigger language -- "significant environmental impacts." The Court, however, determined that the EA did, in effect, predict "significant environmental impacts."[6] Thus, the Corps violated NEPA when it adopted the 2000 SMP without first conducting the proper environmental studies, which are required when "significant environmental impacts" are predicted by the EA.

The preliminary injunction was issued on May 30, 2000 -- ten days before the petitioners filed their motion to intervene (Doc.#21). As discussed below, that injunction did not automatically void the 2000 SMP or petitioners' dock permits, but it did prevent the Corps from further implementation of the plan.

Before the injunction, many of the petitioners had already entered into contracts for boat docks (some of them quite expensive) relying on the Corps to give them valid dock permits. They obviously have a considerable financial interest in having a place on the lake to put those docks. Since the preliminary injunction has already been granted, it appears that the petitioners seek to join this suit before the Permanent Injunction is issued so that the Court might balance the financial harm facing the petitioners if the docks are not allowed, against the environmental harm that will be permitted if the docks are allowed. That is to say, petitioners seek relief in the Permanent Injunction Order which would enjoin the Corps from further violations of NEPA, but which would allow, as a matter of equity, some new boat docks to be placed on the lake.

In their attempt to intervene, petitioners insist that they should be allowed to join this suit as necessary and indispensable parties under Rule 19 of the Federal Rules of Civil Procedure, i.e., they contend that, until they are made parties to this action, this Court does not have the authority to enjoin the use of their dock permits.

Are the petitioners necessary and indispensable? As discussed above, there is no question that they have an interest in the outcome of this case, but are they necessary and indispensable now that the Court has determined that the 2000 SMP, and all permits created under it, were in violation of NEPA? In view of that determination, evidence about boat dock contracts and potential money losses obviously will not cure the Corps' NEPA violations. Also, as explained below, it does not appear that this Court has the authority to grant them the relief they seek, even if they are joined, i.e., the Court does not have the

---

**4.** Because Alternative # 2 was the Corps' "preferred alternative," and the one ultimately adopted as the SMP of 2000, the other three proposed plans are not addressed.

**5.** For example, the EA concluded that, "[t]he approval of the 103 facility (dock) rezoning requests is expected to have a long-term adverse impact on the surface water quality of the reservoir. *See* EA § 5.3.3.1, p. 5-8. Further, "[u]nder the Proposed Action Alternative [2], there would be long-term adverse impacts to wetland vegetation at Greers Ferry Lake as a result of accepting and approving approximately 103 facility (dock) rezoning requests." *See* EA § 5.3.4, p. 5-8.

**6.** The Court uses the word "impact[s]" only because the applicable statutes and regulations use it.

authority to allow the docks to be placed on the lake in violation of NEPA.

It is important to understand that the permits in question were *revokable at any time* the Corps determined that it was in the public interest or emergency circumstances dictated that they be terminated.[7] After the Preliminary Injunction was granted, the Corps immediately sent a letter dated May 31, 2000, to each of the dock permit holders. Although the Corps has denied that the letter revoked the permits, the Court views it as a plain-language revocation. Be that as it may, the impact of the decision issued by the Corps on June 9, 2000, spells curtains for the petitioners' motion to intervene. The Corps' letter of June 9, 2000, states in pertinent part: "... the 2000 Shoreline Management Plan for Greers Ferry Lake is hereby canceled and withdrawn retroactively effective 30 May 2000...." (Doc. 25). Plaintiff argues -- correctly, the Court believes -- that no plan means no permits.

The petitioners and the Corps argue that, even though the Corps has abandoned the 2000 SMP, the permits issued under that plan before May 30, 2000, remain valid. That argument is flawed by one critical fact -- those dock permits were issued in violation of NEPA and will continue to violate NEPA until the Corps does the required environmental tests, which it has apparently decided that it will do. Nonetheless, the Corps' retroactive cancellation of the 2000 SMP back to May 30, 2000, does not cure the NEPA violations which began when the Corps adopted the 2000 SMP on March 14, 2000.

■ There appear to be only two ways which the petitioners' dock permits can now be validated. The first would require a reversal by the Eighth Circuit, holding that this Court erred with respect to its May 30, 2000 decision on the NEPA issue. The Corps has announced that it does not intend to appeal to the Eighth Circuit. Therefore, in order to keep this door open for the petitioners, they will be allowed to intervene for the limited purpose of appealing this Court's May 30, 2000 decision. *See, e.g., Conner, et al. v. Burford, et al.,* 848 F.2d 1441 (9th Cir.1988). If the Eighth Circuit reverses, the permits issued before the Corps' retroactive cancellation of the 2000 SMP *may* then become valid, depending on the Eighth Circuit's opinion.[8]

The second way the dock permits could become valid, would require the Corps to comply with NEPA by completing the necessary environmental studies. Because it now appears that the Corps will be conducting those studies, the dock permits may become valid if the Corps' Environmental Impact Study has favorable results and if the Corps reimplements the 2000 SMP.

Petitioners contend that there is a third way to validate the dock permits. They suggest that this Court has the authority to balance the equities, and issue a Permanent Injunction against the Corps which would allow the petitioners to keep both their dock permits and to fulfill their dock construction contracts. In support of this proposition, petitioners cite several cases involving contracts and permits issued before NEPA violations were enjoined. For example, in *Ohio v. Callaway,* 497 F.2d 1235 (6th Cir.1974), the Corps of Engineers was enjoined during the construction of two reservoir projects for filing insufficient Environmental Impact Statements. A construction association that had entered into agreements with the Corps for construction projects around the lakes was allowed to intervene. The *Callaway* Court

---

7. The dock permits issued by the Corps state: "....the district commander may revoke this permit whenever the public interest necessitates such revocation or when the permittee fails to comply with any permit condition or term, [and] ...if in the opinion of the district commander, emergency circumstances dictate otherwise, the district commander may summarily revoke the permit." *See* Application For Shoreline Use Permit, §§ 26-27.

8. The Corps would also have to reimplement the 2000 SMP.

permitted completion of specific phases of the intervener's pre-injunction contracts after finding that "....the environmental damage incident to the execution of the contracts awarded had already occurred..." and that completion of those contracts would "....not significantly damage or otherwise affect the environment." *Callaway*, 497 F.2d at 1239.

The cases cited by petitioners, including the *Callaway* case, are distinguishable from the case at bar. This is primarily because this Court can say, based upon the Environment Assessment that is part of the Corps' administrative record in the case at bar, that the environmental damage related to the dock permits has not yet occurred, but, when it does, its adverse impact on the environment will likely be long-term - - the Court has considerable confidence that the record supports this conclusion.

 Petitioners have cited no authority for the proposition that permits issued in violation of NEPA can be used after the issuing government agency has withdrawn and canceled the plan under which those permits were issued. Additionally, if this Court issued an injunction that allowed the docks to be placed on Greers Ferry Lake without the required environmental studies first having been conducted, this Court would be side-stepping Congressional intent by authorizing ongoing NEPA violations.

### CONCLUSION

It is impossible for this Court to allow the use of the petitioners' dock permits without creating a continuing violation of NEPA. The Court does not have this authority.

The petitioners' motion to intervene is GRANTED, but only for the limited purpose of appeal. No other boat docks may be placed on the lake and all dock permits issued under the 2000 SMP will remain inoperative until the Corps completes its environmental studies and complies with NEPA, or the Eighth Circuit reverses this Court's decision of May 30, 2000.

The four boat docks that have already been situated on the lake may remain in place pending the Eighth Circuit's decision or the completion of the Corps' environmental study, but they *must* not be used. If the Corps is not able to comply with NEPA and the Eighth Circuit does not reverse, those four docks will have to be removed from the lake.