**Daniel KING**

v.

**Julius T. CUYLER, et al.**

**Civ. A. No. 78–2458.**

United States District Court,
E. D. Pennsylvania.

June 18, 1982.

---

Georgeanne Daher Terrill, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Stephanie L. Vaughn, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

Plaintiff, Daniel King, an inmate at the State Correctional Institute at Graterford ("Graterford") brought this action for compensatory damages and declaratory relief pursuant to 42 U.S.C. § 1983 (Supp. IV 1980), and 28 U.S.C. § 2201 (Supp. IV 1980) claiming that the defendants, correction officers and the superintendent at Graterford, subjected plaintiff to cruel and unusual punishment and deprived him of his rights to equal protection and due process of the law in violation of the Eighth and Fourteenth Amendments to the Constitution.[1] The plaintiff's complaint alleges that defendants conspired to and did falsely convict him of misconduct and possession of marijuana. Further, plaintiff alleges that at a subsequent disciplinary hearing on the misconduct charge he was deprived of the right to call witnesses in the presentation of his defense. As a result of his misconduct conviction, plaintiff lost his pre-release status and his outside job, and was required to

---

1. This court has jurisdiction pursuant to 28 U.S.C. § 1343. 42 U.S.C. § 1983 states, in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

serve 30 days in maximum confinement without his personal belongings.

Two of the named defendants, Superintendent Julius Cuyler and Lieutenant Stanley Korick, have filed this motion for summary judgment on the grounds that plaintiff has not alleged facts sufficient to establish their personal involvement in the purported deprivations of plaintiff's constitutional rights.[2] For the following reasons, defendants' motion for summary judgment is granted in part and denied in part.

### The Standard for Granting Summary Judgment

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Further, in considering the motion for summary judgment, the facts contained in the pleadings, affidavits, depositions, answers to interrogatories and admissions on file must be viewed in the light most favorable to the party opposing the motion, here the plaintiff.[3]

The facts surrounding the allegedly illegal search are disputed. Plaintiff claims that defendant Glace strip searched him in his cell. Having found no contraband, defendant Glace then took the plaintiff to the Day Captain's office where the ranking officer, Captain Mohychic, ordered defendants Glace and Korick to strip search him a second time. The plaintiff's clothing and personal effects were then examined before those present[4] and were laid upon a desk at the front of the office. According to the plaintiff, defendant Glace then picked up a brown bag from the floor next to the desk. He handed the bag to defendant Korick who looked at it and stated that the bag belonged to plaintiff. Marijuana was allegedly found in the bag. The plaintiff, however, denied that the marijuana belonged to him and claimed that he had been framed. Nevertheless, he was accused of possessing contraband and a written reprimand, or misconduct, was executed concerning the alleged illegal act.[5] Although

---

2. Sergeant Robert Glace, also named as a defendant in this action, is not a party to this motion. The other named defendant, Captain Mohychic has died since the alleged incident occurred. A Suggestion of Death has been filed on his behalf and he has been dismissed from the suit.

3. Plaintiff argues that he is entitled to greater latitude in his effort to oppose defendants' Motion for Summary Judgment since he initially filed this complaint pro se and since he is an incarcerated party, citing *Bracey v. Herringa*, 466 F.2d 702 (7th Cir. 1972) and *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This court recognizes that pro se civil rights pleadings are entitled to liberal construction. *Id.* Nevertheless, plaintiff must still set forth facts sufficient to withstand summary judgment. *Guy v. Swift & Co.*, 612 F.2d 383 (8th Cir. 1980) (per curiam).

  Furthermore, plaintiff's reliance upon *Bracey v. Herringa*, 466 F.2d 702 (7th Cir. 1972) is misplaced. First, the Seventh Circuit did not reach the broad issue of whether the summary judgment procedure is properly applied against an incarcerated party. Second, the facts of this case are distinguishable. Here, although plaintiff drafted his complaint pro se, this court appointed counsel to help him prosecute his action. Counsel has represented plaintiff throughout the process of opposing defendants'

summary judgment motion and has conducted discovery relative to the summary judgment motion, at this court's direction.
*United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

4. A third person, Lieutenant Ewing, who was not named as a defendant, was also present with Captain Mohychic, Lieutenant Korick and Sergeant Glace at the time of the search.

5. Defendants have represented that a misconduct is similar to a citation. It charges an inmate with violating a Bureau of Corrections rule. The inmate is reported by a staff member whose name appears on the misconduct form. That member gives the form to the highest ranking officer on duty who determines if the allegation constitutes a breach of Bureau of Correction Rules. He then approves the issuance of the misconduct. The misconduct is served upon the inmate by a different officer who also signs the misconduct. According to Administrative Directive 801 (Rev. 10/78), there are two classes of misconduct. Class one misconducts include the offence alleged here— possession of contraband. For a class one misconduct, Administrative Directive 801 provides that, *inter alia*, an inmate may be placed in close or maximum administrative custody, have his privileges suspended and have his custody or program status reclassified.

the misconduct was written by Lieutenant Ewing, defendant Korick allegedly instructed him regarding the language he should use in describing the incident.[6]

At the plaintiff's subsequent hearing on the misconduct before the Hearing Committee,[7] he requested the assistance of Simon Evans, a fellow inmate, in the presentation of his case and requested the presence of a witness to testify on his behalf. The latter request was denied.[8] The Hearing Committee approved the issuance of the misconduct and plaintiff then appealed the decision to the Program Review Committee (PRC), which approved the Hearing Committee's report, noting that there were no significant procedural violations. The decision of the PRC was then reviewed by the defendant, Julius Cuyler, the Superintendent at Graterford, who signed the PRC report under the preprinted notation "Hearing Committee and Program Review Committee action was completed."

Defendants Korick and Cuyler contend these facts do not establish their personal involvement in either the conspiracy to frame plaintiff or in the denial of witnesses at the disciplinary hearing. Defendants claim that the personal involvement of a person alleged to have denied a constitutional right under color of law is a vital element of a claim under 42 U.S.C. § 1983.

Absent evidence of personal involvement, defendants claim that there can be no material issue of fact as to moving defendants and that judgment as a matter of law is appropriate.

Plaintiff, on the other hand, asserts that he has set forth facts sufficient to prove direct personal involvement by Korick in the conspiracy to frame plaintiff.[9] As to defendant Cuyler, plaintiff asserts that he has established "personal involvement." First, he asserts that Cuyler, in his capacity as Superintendent, approved the findings of the Program Review Committee without challenging the fact that plaintiff was denied his right to present witnesses. Second, plaintiff claims that Cuyler perpetuated a general policy or practice which allowed violations of inmates' rights to occur. Plaintiff claims that this sufficiently states a cause of action under 42 U.S.C. § 1983 and that summary judgment is, therefore, inappropriate.

I will consider first the parties' arguments as they pertain to Superintendent Cuyler.

■ Plaintiff would impose liability on Cuyler for his participation in the denial of witnesses at plaintiff's disciplinary hearing. Even viewing the facts in the light most favorable to plaintiff, he cannot prevail on this claim. Under the applicable prison

6. The events about which plaintiff complains occurred on May 16, 1978 and resulted in three separate misconducts. At the misconduct hearings held on May 18, 1978, plaintiff was found guilty of all three misconducts charged. Plaintiff appealed only one of his convictions, misconduct # 37744. Plaintiff's complaint and the papers filed in opposition to defendants' motion for summary judgment focus on the specific events surrounding the issuance and appeal of misconduct # 37744.

7. According to the Administrative Directives of the Institute, an inmate who receives a misconduct is entitled to a hearing by the Institute's Hearing Committee, composed of certain supervisory personnel. Inmates are permitted to have witnesses testify on their behalf, and to be assisted by a fellow inmate in the presentation of their case by virtue of the Institute's Administrative Directive 801. After the Hearing Committee has rendered its decision, a dissatisfied inmate may appeal the decision to the Program Review Committee (PRC) which is

comprised of other supervisory officials. All decisions of the PRC are further reviewed by the Superintendent of the Institute, who may sustain, reverse or amend the decision of the PRC.

8. Plaintiff's complaint does not allege that he was denied the assistance of Evans in the presentation of his case. In fact, there is a notation on the Hearing Committee's report which indicated that Evans failed to appear at the hearing. The gravamen of his procedural due process claim is the denial of testimony by the requested witness. Plaintiff admits, however, that the requested witness was not even present at the scene of the events in question, i.e., the second strip search resulting in discovery of a bag of marijuana.

9. Plaintiff does not claim that Lieutenant Korick participated in any way in the denial of witnesses at his disciplinary hearing.

regulations, Cuyler played no part in the Hearing Committee's decision to prohibit testimony by witnesses. His sole responsibility under the regulations was to review the findings of the Program Review Committee in order to sustain, amend, or reverse the decision. Admin. Directive 801, III H(7), (Rev. 10/78).

Cuyler did review the Hearing Committee's and PRC's findings, as indicated by his signature on the PRC report. Thus, plaintiff's only claim is that he did not properly exercise his review function. As a matter of law, I find no evidence from which a reasonable person could find that Cuyler acted improperly in his review.

At the time of his review, Cuyler had before him the Hearing Committee's report, the Program Review Committee's report, plaintiff's request for appeal, the misconduct report and plaintiff's inmate record. It was not apparent from the face of these papers that plaintiff was deprived of any procedural due process rights. The Program Review Committee concluded that there were no significant procedural violations. Plaintiff did not raise the issue of procedural violations in his request for appeal. The Hearing Committee's report in this case does not indicate that there were any procedural violations. Thus, Cuyler had no basis on the records before him for concluding that plaintiff had been deprived of his procedural rights—here, the right to a witness at his misconduct hearing.

■ When, as here, no procedural violation is apparent from the face of the documents submitted to the Superintendent for review, plaintiff has no claim that he was deprived of procedural due process because the Superintendent failed to investigate

and challenge the procedures utilized before the Hearing Committee.[10] Given the records before Cuyler at the time of his review, I find, as a matter of law, that he fulfilled his review function within the meaning of Administrative Directive 801.

Plaintiff also claims that Cuyler knew or should have known that violations of inmates' rights were occurring, yet he failed to take any action to remedy the situation. This claim must likewise fail.

The parties agree that the theory of *respondeat superior* does not apply to impose liability on a supervisory official such as Cuyler in section 1983 actions. Likewise, they agree that the language of section 1983 requires a causal connection between the supervisory defendant's actions and a deprivation of plaintiff's constitutional rights. *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979); *Durkin v. Bristol Township*, 88 F.R.D. 613, 615 (E.D.Pa.1980). Plaintiff contends this causative link is present since Cuyler failed to supervise prison personnel adequately so as to correct misconduct resulting in the infringement of inmates' constitutional rights. The gravamen of this theory is that even absent actual knowledge of the alleged conduct here, Cuyler had knowledge of the general policies and practices of the prison and should have been aware of pervasive misconduct by his subordinate officers in which he acquiesced by action or inaction.[11]

Without deciding whether mere negligence or some higher standard of malfeasance is necessary for a finding of liability under these circumstances, I find that there is simply no evidence from which a reasona-

---

**10.** Plaintiff asserts that Cuyler has the power to disapprove a misconduct when he notes that procedural violations have occurred. Accordingly, he concludes that Cuyler's failure to do so in this case gives rise to a claim that plaintiff was deprived of procedural due process. However, just because in appropriate cases Cuyler would suspend or reverse a Hearing Committee decision due to procedural irregularities, does not mean that he must do so in every case. Here, the undisputed facts of record establish

that there was no basis, on the records before Cuyler, for him to conclude that this was an appropriate case for reversal or suspension.

**11.** Plaintiff does not contend that Cuyler breached a duty to train his subordinates adequately, or that Cuyler had failed to establish proper procedures for misconduct hearings or for searches of inmates. His complaint is that Cuyler allowed violations of these procedures to go unheeded.

ble person could conclude that Cuyler was adequately put on notice of misconduct by his subordinates.

There is no allegation that Cuyler knew of the alleged conduct towards plaintiff. Neither is there any allegation that similar conduct had occurred in the past. Cuyler's deposition testimony is uncontradicted and establishes that he had no actual knowledge of the events which form the basis of plaintiff's complaint. Neither could he recall similar complaints being lodged in the past. Plaintiff presents no evidence to suggest otherwise. In fact, even after an opportunity to conduct discovery on these matters, plaintiff cites only the isolated acts of misconduct involving him, and presents no evidence to suggest that such practices are or were commonplace. Without more, Cuyler cannot be said to have had notice of, or to have acquiesced in, a series of improprieties committed by his subordinates. *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974), *Orpiano v. Johnson*, 632 F.2d 1096 (4th Cir. 1980), *cert. denied*, 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981); *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979).[12]

Thus, the plaintiff's second theory does not state a valid claim against Superintendent Cuyler and defendants' motion for summary judgment is granted as to him.

Defendant Korick also seeks summary judgment, claiming that the plaintiff has failed to show he participated in any of the alleged incidents. First, Korick argues that he was not the ranking officer on duty at the time of the search, that he did not order the search, that strip searches are not violative of an inmate's constitutional rights, and that the search was conducted within the provisions of the Institute's administrative rules and did not violate plaintiff's constitutional rights. Alternatively, Korick claims that even if the search were improper, mere presence at the scene of the search

is an insufficient ground on which to impose liability under § 1983.

As to defendant's first contention, there are disputed issues of material fact to be resolved regarding the propriety of the search. As to defendant's second contention, liability under § 1983 may be imposed upon an official who knowingly acquiesces in the misconduct of others. Although the defendant is correct that mere presence is an insufficient basis on which to impose liability for an unconstitutional act, it nevertheless may be evidence of actual knowledge of and acquiescence in the improper behavior. *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974). In the present case, the plaintiff has provided facts in his affidavit which, if proved, would ·be sufficient to impose liability on Korick. According to the plaintiff, not only was Korick present at the time he was allegedly framed, but he also conducted the second strip search of the plaintiff and acquiesced in the deliberate placement of the marijuana near the desk where the plaintiff's clothes were placed.

Furthermore, Korick's claim that he was merely carrying out the orders of his superior officer does not provide a basis for granting summary judgment, since, nevertheless, he may have had a duty to intervene to prevent the alleged violation of plaintiff's rights. *Putman v. Gerloff*, 639 F.2d 415 (8th Cir. 1981).

There remains a question of fact concerning the behavior of Lieutenant Korick which, if proved, could impose liability on him. Therefore, granting summary judgment on his behalf at this time would be improper and defendant Korick's motion is denied.

---

12. Plaintiff relies upon *Wright v. McMann*, 460 F.2d 126 (2d Cir.), *cert. denied*, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972), for the proposition that a supervisory official may be liable for infringements of constitutional rights where he should have knowledge of those acts and acquiesces in them through inaction. However, in *Wright v. McMann*, unlike this case, there was a history of previous episodes requiring the Warden to take action.