**Abdul Hakeem Jahmal Naseer SHABAZZ, a/k/a Owen D. X. Denson, Plaintiff,**

v.

**C.R. ODUM, Unit Manager, Mab Unit; George C. Wilkinson, Warden; Defendant.**

Civ. A. No. 83–0453.

United States District Court, M.D. Pennsylvania.

Aug. 15, 1984.

Abdul Hakeem Jahmal Naseer Shabazz, pro se.

David C. Shipman, Asst. U.S. Atty., U.S. Atty's Office, Harrisburg, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

Plaintiff, Abdul Hakeem Jahmal Naseer Shabazz, at the time he was a prisoner at the federal penitentiary in Lewisburg, Pennsylvania, filed a *pro se* complaint alleging that defendants, C.R. Odum, a unit manager at the prison, and George C. Wilkinson, the warden, violated his constitutional right to due process, and certain Bureau of Prisons' policy statements, when Odum seized plaintiff's radio from his cell. Defendants have filed a motion for summary judgment,[1] with supporting brief, affidavits and exhibits, asserting that no constitutional violation took place and, in the language of Fed.R.Civ.P. 56(c), they claim that they are entitled to judgment as a matter of law.

### I. Background

Plaintiff's complaint, a "1331 Form" with a "Statement Of Facts And Appendix With Memorandum Of Law And Relief In Support Thereof," makes, in narrative form, the following relevant allegations. On February 22, 1983, defendant Odum entered plaintiff's unattended cell and confiscated his radio. The radio at that time had been modified so that plaintiff could recharge its batteries from a prison battery. After the seizure plaintiff filed a tort claim for the value of the radio and also attempted to recover the radio itself by filing a request for administrative remedy. It is further alleged that defendant Wilkinson conspired with Odum in the taking of plaintiff's property and that both defendants were motivated by racial and religious discrimination.

Plaintiff contends Odum's action violated his right to due process of law and Bureau of Prisons Policy Statements 5270.3, 541.-12, and 541.10. He contends that due process and the policy statements required that he be given notice and a hearing prior to the seizure of the radio. The complaint seeks, among other things, injunctive relief

---

1. Defendants also filed the motion in the alternative, as a motion to dismiss pursuant to Fed. R.Civ.P. 12(b). Because defendants have already filed an answer to the complaint, however, a motion to dismiss is now untimely, *see Litwhiler v. Hidlay,* 429 F.Supp. 984 (M.D.Pa. 1977), and we will treat the motion solely as a motion for summary judgment.

for the return of the radio as well as compensatory and punitive damages.

Defendants' answer admits that the radio was taken but only because it had been altered. They deny any constitutional violation or that Policy Statements 5270.3, 541.12 and 541.10 were applicable to the confiscation.

## II. Standard of Review of *Pro Se* Complaints and for the Grant of Summary Judgment

■ While *pro se* pleadings are entitled to liberal construction, the plaintiff must still set forth facts sufficient to withstand summary judgment. *King v. Cuyler*, 541 F.Supp. 1230, 1232 n. 3 (E.D.Pa.1982).

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must resolve any doubts as to the existence of genuine issues of fact against the moving parties, and inferences to be drawn from the evidentiary sources submitted to the court must be resolved in favor of the non-moving party. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402 (3d Cir.1981). Based upon the foregoing standards, and keeping in mind the "drastic" nature of the remedy, *id.* at 405, we nevertheless conclude after careful review of the pleadings, exhibits, and affidavits submitted in favor of, and against the motion, that summary judgment in favor of the defendants is appropriate for the reasons set forth below.

## III. Alleged Due Process Violation

The material facts in this case are simple and not in dispute. Plaintiff admits that he kept a radio in his cell which had been modified to permit its batteries to be recharged from a prison battery. Defendants admit that they seized the radio without giving plaintiff notice or a hearing prior to the seizure. The only issue is whether plaintiff was entitled to a pre-seizure hearing or whether the postdeprivation remedies available to plaintiff adequately protected his due process rights.

Defendants assert that the radio was seized because it was contraband as defined by Bureau of Prisons Policy Statement 5580.1. Paragraph 6(a) of the statement defines contraband as any item not "issued by the staff, purchased in the commissary, purchased or received through approved channels, approved for receipt by an authorized staff member, or authorized by institution regulation." (Defendants' Ehxibit 2). Defendant Odum discovered the radio in plaintiff's cell attached by copper wire to a battery charger. (Defendants' Exhibit 1). Plaintiff admits it was in this condition because he wished to recharge the batteries already in the radio rather than buy new ones with his meager prison wages. (Plaintiff's Complaint). Defendant Wilkinson asserts that the radio in its altered condition was "a fire hazard and disruptive to the good order of the institution." (Defendants' Exhibit 2).

Plaintiff does not question whether defendant Odum could have seized the radio as contraband. Rather, as noted previously, he contends that he should have been given a preseizure hearing of some kind where he could have presented reasons why the radio should not have been taken from him.[2] In support of his position he also cites Bureau of Prisons Policy Statement 5270.3, dealing with procedures to be followed when disciplinary sanctions are imposed on an inmate.[3] In response, rely-

---

**2.** Plaintiff couches his due process violation argument in terms of a violation of 42 U.S.C. § 1981–83. These sections, of course, do not apply to federal officials, *see Lee v. Carlson*, 564 F.Supp. 1048 (M.D.Pa.1983), but plaintiff's substantive claim is unaffected since he has a cause of action for a violation of his Fifth Amendment right to due process. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Nar-*

*cotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**3.** Because of our discussion below concerning the application of paragraph 7 of Policy Statement 5580.1 to the confiscation of the radio, we agree with the defendants that Policy Statements 5270.1, 541.12, and 541.10 simply do not apply to this situation. The prison authorities did not have to resort to rules typically govern-

ing upon *Hudson v. Palmer,* — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Slade v. Petrovsky,* 528 F.Supp. 99 (M.D. Pa.1981), defendants assert that, because the federal government has provided postdeprivation remedies for the seizure, there was no due process violation.

Defendants' reliance upon *Hudson* and *Slade* is misplaced. In those cases, the conduct of the state official, either negligent, *Slade,*[4] or intentional, *Hudson,* had either been in violation of an institution's rules, or a random action unauthorized by state procedure. In *Hudson,* relying upon *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court reasoned that postdeprivation remedies were adequate to protect plaintiff's right to due process in situations involving intentional, unauthorized conduct because such conduct cannot be anticipated and controlled in advance. Hence, predeprivation remedies were "impracticable." — U.S. at —, 104 S.Ct. at 3203. Significantly, however, the Court also noted:

> Two terms ago, we reaffirmed our holding in *Parratt* in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 [102 S.Ct. 1148, 71 L.Ed.2d 265] (1982), in the course of holding that postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action.

*Id.* (footnote omitted). *Parratt,* the seminal case for *Slade, supra,* and *Hudson,* like *Slade,* involved negligent conduct, and the Court held there that the negligent violation of prison rules dealing with receipt of packages resulting in loss of a prisoner's hobby materials did not violate due process when adequate postdeprivation remedies were provided. The Court reasoned as follows:

> In such a case, the loss is not a result of some established state procedure and the state cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.

*Id.* 451 U.S., at 541, 101 S.Ct. at 1916, 68 L.Ed.2d at 432.

This rationale for concluding that post deprivation remedies were adequate in *Parratt, Hudson* and *Slade* cannot apply in this case. Here, while plaintiff does not specifically allege it, the crux of his argument is that Bureau of Prisons Policy Statement 5580.1 violates due process because it authorizes prison officials and employees to seize purported contraband without prior notice and a hearing.[5]

Paragraph 7(a) of the Statement (defendants' Exhibit 2) provides that contraband "will be seized when found whether in the physical possession of an inmate, in an inmate's living quarters, or in common areas of the institution." Paragraph 7(b)(2) further provides, in relevant part, that contraband will be inventoried and stored, and that the "concerned inmate will receive a copy of the inventory which will advise him/her of the item(s) seized. Within seven days of the seizure, the inmate who possessed the items(s) at the time of the seizure will be given the opportunity to present to the Chief Correctional Supervisor or his designate evidence ... that same is not contraband."

Defendants admit that defendant Odum acted pursuant to this Policy Statement when he took the radio from plaintiff's cell.[6] (Defendants' Exhibit 2). Thus, un-

---

ing more serious disciplinary infractions than the presence of a contraband radio in a prisoner's cell. Hence this opinion will concentrate on the constitutional issue alone.

**4.** In *Slade,* the court did not discuss in detail whether the officials' conduct was negligent or intentional but did note that the officials had filed affidavits denying that they "knowingly or willfully attempted to violate plaintiff's constitutional rights." *Slade, supra,* 528 F.Supp. at 100.

**5.** As noted previously, we must liberally construe plaintiff's complaint.

**6.** Odum, however, did not issue a copy of the inventory form or an incident report. He merely advised plaintiff to supply an address to which the radio could be sent. (Defendants' Exhibit 1). Defendant Wilkinson alleged that he would cure the defect in procedure by requesting that the federal penitentiary at Terre Haute, Indiana, to which plaintiff had been transferred, give plaintiff the requisite hearing.

like *Hudson, Parratt,* and *Slade,* the loss was the result of some established procedure, predictable, and one for which, arguably, some predeprivation hearing could have been provided.

■ Due process, however, does not require a predeprivation hearing every time a loss occurs as a result of an established governmental procedure. As noted by the Court in *Parratt,* in discussing prior case law in this area:

These cases recognize that either the necessity of quick action or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process.

451 U.S. at 539, 101 S.Ct. at 1915, 68 L.Ed.2d at 431 (footnote omitted). In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), dealing with a state mandated deadline that automatically cut off a state commission's right to adjudicate a handicapped person's claim of employer discrimination, the Court stated:

[T]he timing and nature of the required hearing "will depend on appropriate accommodation of the competing interests involved." *Goss v. Lopez,* [419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)]. These include the importance of the private interest and the length or finality of the deprivation, see *Memphis Light, Gas & Water Div. v. Craft,* [436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978)], and *Mathews v. Eldridge,* [424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)]; the likelihood of governmental error, see id., at 335, 47 L.Ed.2d 18, 96 S.Ct. 893; and the magnitude of the governmental inter-

ests involved, see ibid., and *Wolff v. McDonnell,* [418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, 71 O.O.2d 336 (1974)]. *Id.* at 434, 102 S.Ct. at 1157, 71 L.Ed.2d at 277 (brackets added) (footnote omitted).

■ Applying these factors to the instant case, we conclude that plaintiff was not entitled to a hearing prior to the seizure of his radio. Plaintiff's interest in a predeprivation hearing was not substantial. It was merely his right to the possession and use of his radio. It was clearly outweighed by the governmental interests. The radio, as altered by the plaintiff, constituted a fire hazard. As such, the prison officials were justified in using a procedure allowing immediate seizure of the radio upon its discovery and a postdeprivation hearing afterward. Additionally, there was little likelihood of governmental error since the alteration in the radio would be clearly visible and such a radio would undoubtedly in most cases be contraband. Further, the finality and severity of the deprivation was minimal since two of plaintiff's post deprivation remedies would have provided for the return of the radio in a short time if plaintiff could have proved it was not contraband.

Plaintiff had available to him several of these remedies. While he apparently did not pursue the informal remedy specifically set forth in Policy Statement 5580.1, he did pursue relief under the United States Tort Claim Procedure, 28 U.S.C. § 2671 *et seq.* (1976) (Plaintiff's Complaint, Defendants' Exhibit 5), and the Bureau of Prisons Administrative Remedy Procedure, 28 C.F.R. § 542.10 *et seq.* (1983). (Plaintiff's Complaint, Defendants' Exhibit 3). These procedures adequately protected plaintiff's due process rights. *See Parratt v. Taylor, supra.*

■ In plaintiff's response to the motion,[7] he asserts that summary judgment is

---

We cannot tell from this record whether the request was ever made. Terre Haute, however, confiscated the radio because it did not have plaintiff's register number inscribed on it. (Affidavit of Rick Stiff, paralegal specialist at the U.S. Penitentiary, Terre Haute, Indiana, dated July 10, 1984). We have no competent evidence from which we can conclude whether plaintiff ever reclaimed the radio at Terre Haute but that

is immaterial for the purposes of the disposition of his claim against defendants.

7. Plaintiff's response is styled "Plaintiff's Objection and Traverse To Defendants' Motion" to which has been attached as Exhibits plaintiff's typewritten demand for jury trial, filed on August 1, 1983, and his own, typewritten motion for summary judgment, filed on May 29, 1984. Plaintiff's motion was denied by this court on

improper in this case because he has demanded his constitutional right to trial by jury. When a summary judgment is proper, however, there is no violation of the Seventh Amendment. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.) *cert. denied* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

■ He also claims that he has filed his own motion for summary judgment and that, therefore, defendants' is untimely and improper. Defendants' right to file a summary judgment motion is not precluded by plaintiff's filing first. See Fed.R.Civ.P. 56(b). Additionally, the motion may be made at any time. *See Groover v. Magnavox Co.*, 71 F.R.D. 638 (W.D.Pa.1976). We reject plaintiff's contentions.

We also note that plaintiff's case is not saved by his allegation that the seizure was motivated by racial and religious discrimination. In *Hudson v. Taylor, supra,* the plaintiff also claimed that the seizure and destruction of his personal effects by a prison guard was intentional harassment. There, despite the claim of ill-will or bad motive, the Supreme Court held that post-deprivation remedies adequately protected plaintiff's right to due process.

Finally, because defendants did not violate plaintiff's constitutional rights, plaintiff's claim of conspiracy must also fail. Assuming *arguendo* that a conspiracy existed, it is not actionable if it did not deny plaintiff his right to due process. *See Banghart v. Sun Oil Co.*, 542 F.Supp. 451 (E.D.Pa.1982); *Tarasi v. Pittsburgh National Bank*, 401 F.Supp. 420, 421 n. 4 (W.D.Pa.1975).

In accordance with the foregoing opinion, we will issue an appropriate order.

July 2, 1984 for failure to comply with two local rules.