LOCUST LANE and
Paxtowne, Plaintiffs,

v.

SWATARA TOWNSHIP
AUTHORITY, Defendant.

Civ. A. No. 85–1248.

United States District Court,
M.D. Pennsylvania.

Jan. 17, 1986.

Albert J. Slap, Rex F. Brien, Slap, Williams & Cuker, Philadelphia, Pa., for plaintiffs.

Victor A. Bihl, Reynolds, Bihl, Wion & Trace, Terry R. Bossert, McNees, Wallace & Nurick, Harrisburg, for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Plaintiffs, Locust Lane and Paxtowne, have brought a "citizen's suit" pursuant to § 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a) alleging that defendant, Swatara Township Authority, violated the effluent limitations and construction compliance schedule [1] contained in their National Pollution Discharge Elimination System ("NPDES") permit. Plaintiffs are limited partnerships which own land in Lower Pax-

ton Township. Defendant is the owner and operator of Swatara Township Water Pollution Control Plant, serving certain areas including Lower Paxton Township. Subsequent to lodging its complaint, plaintiffs filed a motion for summary judgment. Defendant has opposed plaintiffs' motion and filed a motion to dismiss the complaint, asserting that plaintiffs do not have standing to pursue this action.[2] For the reasons set forth below, we will grant plaintiffs' motion for summary judgment on their claim that defendant violated the schedule of compliance.

### II. *Background.*

On July 7, 1974, defendant was issued a NPDES permit by the Pennsylvania Department of Environmental Resources ("Pa. DER"), which was revised in 1979 and 1984. The permit allows defendant to discharge wastewater into Swatara Creek from its facility in accordance with specified effluent limitations. It also includes a schedule of compliance for the construction of additional wastewater treatment facilities.

Plaintiffs allege that defendant violated the conditions of the NPDES permit by exceeding the effluent limitations. Their claim is supported by certain Discharge Monitoring Reports ("DMR") which apparently indicate that defendant has exceeded the discharge limitations. Although defendant disputes the accuracy of the DMRs, it does admit that there have been a limited number of discharges which were in excess of the effluent limitations.

Plaintiffs also allege that defendant violated the NPDES permit by failing to comply with the schedule of compliance for the construction of its new facilities. In support of their position, plaintiffs have submitted a notice of violation issued on July 25, 1985 by the Environmental Protection

---

1. The permit requires construction of additional facilities at defendant's disposal site in accordance with time requirements contained in a "schedule of compliance."

2. Because defendant's motion to dismiss was proceeded by an answer we will treat the motion to dismiss as a motion for summary judgment. *See Shabazz v. Odum,* 591 F.Supp. 1513 (M.D.Pa.1984); *Litwhiler v. Hidlay,* 429 F.Supp. 984 (M.D.Pa.1977).

Agency and an order amending the NPDES permit issued on August 14, 1985 by the Pennsylvania Department of Environmental Resources. These documents state that defendant violated the terms of the permit by its failure to comply with the schedule of compliance. In accordance with the 1984 permit, construction of the facilities was scheduled to begin in February, 1985. However, before construction began, the schedule of compliance was amended on August 14, 1985 to provide that construction of the plant was to begin within one hundred and twenty (120) days after receipt of a final Water Quality Management Part II Permit by defendant. Defendant applied for the Part II permit, but to date has not received it.

The basis of plaintiffs' complaint is that they have been precluded from developing housing on their land because of defendant's failures to comply with the NPDES permit. This claim is based upon plaintiffs' inability to obtain building permits from the Township of Lower Paxton, because the Pa. DER has imposed a limited sewer ban on all townships using defendant's plant allegedly due to defendant's violations of the permit. In order to remedy this situation, plaintiffs have requested that we (1) declare defendant in violation of the Clean Water Act, (2) order defendant to comply with the conditions of the NPDES permit and (3) award the United States Treasury civil penalties of $10,000 per day for each day that defendant was in violation of the permit. Plaintiffs have also requested that they be awarded their litigation costs.

## III. *Discussion.*

We must evaluate the motions under the following, well established standard:

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only where the moving party establishes that no genuine issue exists as to any of the material facts in the case, and that he is entitled to judgment as a matter of law. *See, e.g., Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402,

405 (3d Cir.1981). Courts should resolve any doubts as to the existence of issues of material fact against the moving party, and view all inferences in the light most favorable to the nonmoving party. [citation omitted].

*Fragale & Sons Beverage Co. v. Dill,* 760 F.2d 469, 472 (3d Cir.1985) (brackets added).

### A. Defendant's Motion for Summary Judgment.

■ Defendant argues that plaintiffs lack standing to bring an action under § 505(a) of the Clean Water Act. It contends that plaintiffs have not established that they were injured by defendant's conduct and that even assuming that plaintiffs were injured, it is not the type of injury protected by the Clean Water Act.

Both parties agree that the standing issue is governed by *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In *Morton,* the United States Supreme Court held that a party has standing

where they had alleged that the challenged action had caused them "injury in fact," and where the alleged injury was to an interest "arguably within the zone of interest to be protected or regulated" by the statutes that the agencies were claimed to have violated.

*Id.* at 733, 92 S.Ct. at 1365, 31 L.Ed.2d at 642. (footnote omitted).

Discussing the injury in fact requirement, the Court stated: "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 734–735, 92 S.Ct. at 1366, 31 L.Ed.2d at 643.

Defendant argues that plaintiffs do not have standing because they are not seeking to vindicate environmental concerns. In other words, defendant claims that plaintiffs' interests are not within the zone of interests protected by the Clean Water Act. In support of its position, defendant cites *Dan Caputo Co. v. Russian River County Sanitation District,* 749 F.2d 571 (9th Cir. 1984). In *Dan Caputo,* plaintiff brought

an action under § 1365(a) challenging the decision of the defendant to award a construction contract to correct allegedly defective work performed by plaintiff. Defendant moved to dismiss the complaint on the grounds that plaintiff did not have standing. The court concluding that plaintiff did not have standing, stated:

Caputo/Wagner's second theory is that the citizen-suit provision of the Clean Water Act, 33 U.S.C. § 1365(a)(2) (1982), provides Caputo/Wagner with standing to press its funding challenge. Caputo/Wagner, however, suffers financial injury only from the reallocation of grant funds. The purpose of the citizen-suit provision "is to ensure that an interest in the environment and clean water, whether or not economically based, is a sufficient basis for a citizen suit." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1268 (9th Cir.1982). Caputo/Wagner's claim does not arise from an interest in the environment, and does not seek to vindicate environmental concerns. Therefore the citizen-suit provision, like § 10(a) of the APA, does not accord Caputo/Wagner standing to vindicate its interest in the remaining grant funds.

*Id.* at 575.

Plaintiffs, however, citing *State of Michigan v. City of Allen Park*, 501 F.Supp. 1007 (E.D.Mich.1980), maintain that their interest lies with the zone of interest protected by the Clean Water Act. In *Allen Park*, plaintiffs, low bidders on a construction contract to expand defendant's facilities, brought an action to enforce the schedule of compliance contained in a certain NPDES permit. Defendant challenged plaintiffs' standing on the basis that their purely economic injury was not within the zone of interests protected by the Clean Water Act. The court rejected defendant's argument, finding that:

Because the contractors do have an interest that is adversely affected by defendants' continued inaction, and because this is an enforcement action which will further the goals of FWPCA [the predecessor to the Clean Water Act], I find that the contractor plaintiffs do have standing

under the citizen suit provision of FWPCA § 505, 33 U.S.C. § 1365. *See State of Ohio ex rel. Brown v. Callaway*, 497 F.2d 1235, 1243 (6th Cir.1974).

*Id.* at 1014.

We find the analysis employed in *Allen Park* to be more persuasive as it is more in keeping with the legislative intent of § 1365. Section 1365 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation....

33 U.S.C. § 1365(a).

The term "citizen" is defined as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). As these sections indicate, there is no requirement that the action be brought for the benefit of the environment. Similarly, a review of the legislative history does not reveal an intention on the part of Congress to impose such a limitation. Instead, the only limitation imposed by § 1365 is that the person or persons bringing the action must have an interest which is adversely affected. Defendant further asserts that *Dan Caputo* is more consistent with the legislative purpose of the Clean Water Act. The purpose of the Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. Granting plaintiffs standing in this case will not defeat the Act's purpose, but will advance it by permitting enforcement of the NPDES permit requirements. Therefore, we conclude that plaintiffs' interests are within the zone of protected interests.

Defendant next argues that plaintiffs do not have standing because any injury incurred did not result from its failure to comply with the NPDES permit. To the contrary, plaintiffs assert that as a direct result of defendant's violations of the NPDES permit, the Pa. DER has imposed a limited sewer ban, thereby precluding them from obtaining all of the building permits required to develop their property. In support of their position, plaintiffs have submitted a letter from the Pa. DER to plaintiffs' attorney dated June 4, 1985 which confirms the ban until the expanded facilities are operational. The letter also indicates there can be no diminution of the restrictions until construction begins. Support for plaintiffs' position is also found in the defendant's Chapter 94 Annual Report to Pa. DER, which also shows that relief from the sewer ban will be considered only if there are no delays in the construction schedule and that all restrictions will be removed only when construction is completed.

Based upon this evidence we find that plaintiffs were injured by defendant's failure to comply with the construction schedule contained in the NPDES permit, but were not injured by defendant's violations of the effluent limitations. Plaintiffs have provided no evidence which demonstrates that the sewer bans were the result of defendant's excessive discharges. Plaintiffs' primary evidence, the letter issued by the Pa. DER and Chapter 94 report, address only the affect of defendant's failure to comply with the schedule of compliance. This evidence, however, clearly supports plaintiffs' position that they have been injured by defendant's failure to comply with the construction schedule. In contrast with *Morton, supra,* plaintiffs are claiming an injury which is more than a generalized interest.

Finally, defendant argues that the relief requested by plaintiffs will not redress the injury caused by defendant's non-compliance with the construction schedule. We disagree, noting at the outset that plaintiffs must only demonstrate that there is a substantial likelihood that the requested relief will remedy the claimed injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 74 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595, 612 n. 20 (1978). Plaintiffs have requested injunctive relief, ordering defendant to comply with the construction compliance schedule contained in its NPDES permit and civil penalties. As previously noted, the Pa. DER will remove the sewer ban upon completion of the planned facility and relief from the ban will be considered only after construction begins. Thus, enforcement of the compliance schedule will enable the Pa. DER to lift the sewer ban which has precluded plaintiffs from developing housing on their property as soon as possible, and we conclude that plaintiffs have standing to bring their claim that defendant violated the schedule of compliance.

B. Plaintiffs' Motion for Summary Judgment.

■ We now turn to plaintiffs' motion for summary judgment. Plaintiffs contend that they are entitled to summary judgment because they have demonstrated that defendant is in violation of its NPDES permit. Defendant opposes the motion on the grounds that there are several issues of material fact in dispute. As plaintiffs correctly point out, NPDES enforcement actions are based on strict liability. *Student Public Interest Research Group of New Jersey, Inc. v. Tenneco Polymers, Inc.,* 602 F.Supp. 1394 (D.N.J.1985); *United States v. Earth Sciences, Inc.,* 599 F.2d 368 (10th Cir.1979). Thus, the only question before us is whether defendant violated the construction schedule. Contrary to defendant's contention, the relevant facts are not in dispute. It is undisputed that from February 1, 1985 to August 14, 1985 defendant was in violation of the mandated construction schedule. It is also undisputed that defendant is not currently in violation of the construction schedule. With this in mind, we will address the legal issues raised by defendant.

First, defendant argues that its failure to comply with the construction schedule is not the type of violation which provides a citizen with a cause of action under § 1365. Section 1365(a)(1) provides that a citizen may commence an action against any person "who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation ...." 33 U.S.C. § 1365(a)(1). Section 1365(f) defines an effluent standard or limitation as "a permit or condition thereof issued under section 1342 of this title." 33 U.S.C. § 1365(f). Defendant admits that this definition apparently includes schedules of compliance, but nevertheless maintains that a construction schedule is not a "condition" whose violation gives rise to a cause of action under § 1365. Again, defendant has attempted to impose a limitation on § 1365 where one is neither supported by the language nor the legislative history. To the contrary, the legislative history provides that:

> In addition to violations of section 301(a) citizens are granted authority to bring enforcement actions for violations of schedules or timetables of compliance and effluent limitations under section 301, standards of performance under section 306, prohibitions or effluent standards and pretreatment standards under section 307, provisions of certification under section 401, and any condition of any permit issued under section 402.

S.Rep. No. 414 92nd Cong. 2d Sess., *reprinted in,* 1972 U.S. Code Cong. & AD. News 3668, 3747.

We also note that defendant has not cited any authority which supports its position. We conclude that defendant's failure to comply with the construction schedule contained in the NPDES permit is actionable under § 1365(a).

Second, defendant argues that past violations of the construction schedule cannot be the basis for a suit under § 1365. In *Fishel v. Westinghouse Electric Corp.,* 617 F.Supp. 1531 (M.D.Pa.1985) we held that a "citizens suit" may be brought for past violations of the Clean Water Act. Defendant maintains that *Fishel* is distinguishable because it dealt only with violations of effluent limitations. However, as previously noted, there is no reason to distinguish between effluent limitations and compliance schedules for purposes of § 1365, and again defendant's position is not supported by authority. Based upon these considerations, we will grant plaintiffs' motion for summary judgment on their claim that defendant violated the schedule of compliance.

**C. Requested Relief.**

 Having found that defendant violated the Clean Water Act we will now consider the relief requested by plaintiffs. First, plaintiffs are seeking injunctive relief, requiring defendant to comply with the construction schedule contained in the NPDES permit. Defendant is currently in compliance with the schedule in effect and there is no evidence that a violation of this schedule is reasonably expected to recur. Thus, plaintiffs' request for an injunction will be denied. Second, plaintiffs are requesting that we award the United States Treasury civil penalties of $10,000 per day for each day defendants were in violation. Pursuant to 33 U.S.C. § 1319(d) defendant may be subject to a "civil penalty not to exceed $10,000 per day of such violation." *Id.* The parties, however, have not addressed the issue of damages and the amount of the civil penalty, if any. Third, plaintiffs are seeking an award of litigation expenses. Litigation costs are expressly authorized by § 1365(d) which provides

> (d) The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance

with the Federal Rules of Civil Procedure.

33 U.S.C. § 1365(d).

In support of their request, plaintiffs have submitted the time records of counsel but again the parties have not addressed this issue in their briefs. It is also unclear whether plaintiffs are entitled to recover all of their attorney's fees since they only partially prevailed.

An appropriate order will be issued.

## ORDER AND JUDGMENT

AND NOW, this 16th day of January, 1986, it is ordered that:

1) The motion of defendant for summary judgment is granted, in part, and judgment is entered in defendant's favor, as to plaintiffs' claim that defendant violated the effluent limitations contained in the NPDES permit. In all other respects the motion is denied.

2) The motion of plaintiffs for summary judgment is granted, in part, and judgment is entered in plaintiffs' favor, as to their claim that defendant violated the schedule of compliance contained in the NPDES permit. In all other respects, the motion is denied.

3) Plaintiffs' request for an injunction is denied.

4) Upon application the court will conduct a hearing to determine what, if any, penalty and/or costs should be imposed in this proceeding.