**Joan H. BURNETT, Plaintiff,**

v.

**ESL FEDERAL CREDIT UNION, Defendant.**

No. 00–CV–6320L.

United States District Court, W.D. New York.

March 28, 2002.

---

Joan H. Burnett, Churchville, NY, Pro se.

James Metzler, Boylan, Brown, Code, Fowler, Vigdor & Wilson, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

In this action, plaintiff Joan Burnett ("Burnett") alleges that her former employer, ESL Federal Credit Union ("ESL") discriminated against her in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Currently before the Court, is ESL's motion (Dkt.# 12), under FED. R. CIV. P. 56, for summary judgment. For the reasons that follow, ESL's motion is granted.

### Factual Background

ESL hired plaintiff in June 1995 as a Teller Trainee. In her first months at ESL, Burnett performed satisfactorily, and she received an overall performance rating of "3" for the remaining months of 1995. In January 1996, plaintiff requested permission for a leave of absence. In support of her request, Burnett advised Nancy Storr, an ESL vice-president and human resources manager, that she was under "stress" at that time. ESL granted plaintiff's request, and Burnett's leave of absence began on January 17, 1996.

Nearly six months later, on July 8, 1996, she returned to work. The record reflects that, after her return, ESL continued to find plaintiff's work to be satisfactory. In fact, her overall performance rating increased from "3" in 1995 to "4" in 1996. ESL subsequently promoted Burnett to Teller on January 20, 1997, and to Member Service Specialist on July 21, 1997.

In June 1998, ESL posted an available position for Head Teller. The posting for the position noted that a "minimum of 3–5 years ESL Teller or Senior Teller experience" was a "position prerequisite." On August 27, 1998, plaintiff completed an

application for this position. On her application, however, plaintiff .admitted that she only had 14 months of experience in her then current position.

The position posting also listed, among other things, "supervisory skills" as a position prerequisite. On September 1, 1998, plaintiff's former supervisor, Charles Henry, Jr., noted that, although plaintiff was performing in a fully satisfactory manner and had not received any written warning within the past year, she lacked the position requirements as listed on the job posting. He added the following additional comments on Burnett's application:

> Not qualified for Head Teller position. Needs leadership and supervisory skills. Suggested she post for a Senior Teller position first.

On September 16, 1998, after plaintiff had been advised that she would not be considered for the Head Teller position, she tendered a resignation letter, dated September 3, 1998. She had been employed by ESL for little more than three years when she resigned.

On September 14, 1998, just two days before she tendered her resignation but over a week after she dated her resignation letter, plaintiff filed a charge with the New York State Division of Human Rights ("State Division") in which she claimed that ESL discriminated against her because she was not offered certain positions in 1998. The charge was deemed contemporaneously filed with the Equal Employment Opportunity Commission ("EEOC"). On April 24, 2000, following its investigation of plaintiff's charge, the State Division issued its determination that "there is no probable cause to believe that [ESL] has engaged in or is engaging in" disability discrimination. The State Division further observed:

[t]he investigation did not disclose sufficient evidence to support a belief that the complainant was denied equal terms, conditions and privileges of employment, or denied available positions by the respondent, because of a perceived disability. The investigation disclosed that the complainant was promoted twice in 1997 after having been out on disability for almost six months in 1996. There is no evidence that management employees who were involved in the posting and promotion process perceived the complainant to have a disability during the time she was posting for three separate positions in 1998. Some of those managers were unaware that the complainant had been out on disability 1996.... After investigation there is insufficient evidence to support a belief that the complainant was unlawfully discriminated against by the respondent because of a perceived disability. The complaint is therefore ordered dismissed and the file is closed.

On June 7, 2000, the EEOC adopted the State Division's findings, and also closed its file on plaintiff's charge.

In her *pro se* complaint, plaintiff alleges disability discrimination in violation of the ADA. More specifically, she alleges that her 1996 performance appraisal, issued on January 15, 1997, was adversely impacted by a perception that Burnett was disabled. She also appears to assert that her application for the Head Teller position in 1998 was not given the proper consideration in September 1998 because she was perceived as disabled. Complaint, ¶¶ 6, 19, Dkt. # 1. ESL counters that plaintiff has failed to raise a *prima facie* case under the ADA.[1]

In violation of this Court's Local Rule 7.1(e), plaintiff failed to submit any affida-

---

1. Plaintiff has not filed a statement of material facts as to which she contends there is a genuine issue as required by Rule 56 of this Court's Local Rules of Civil Procedure. Fail-

vit or memorandum in response to the present motion. Instead, plaintiff responded with a one page letter (Dkt.# 19), in which she referenced a variety of unauthenticated pages of personal notes and other documents pertaining to her employment at ESL, which she originally attached to her complaint.

This Court subsequently provided plaintiff, because of her status as a party appearing *pro se*, with notice of the requirements of Rule 56 as well as this Court's Local Rules 7.1(e) and 56, and of the consequences of noncompliance therewith. Decision and Order, entered July 2, 2001, Dkt. # 20 [2]; *see also Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir.2001). I also granted plaintiff an additional opportunity to serve supplemental

papers in opposition to ESL's motion, and to comply with FED. R. CIV. P. 56 and Local Rules 7.1(e) and 56. Plaintiff thereafter submitted another one page letter with attachments. Dkt. # 21. She never filed any affidavits or memorandum.

## DISCUSSION

Defendant now moves, under FED. R. CIV. P. 56, for summary judgment, asserting that plaintiff's complaint should be dismissed in its entirety both because plaintiff is not disabled under the ADA, and even if she is, there is no evidence of discrimination in violation of the ADA.

### A. Summary Judgment—General Standards

The standard for deciding summary judgment motions is well established.

---

ure to comply with Local Rule 56 allows the Court to deem admitted all material facts set forth in defendant's Rule 56 statement. While, in light of the facts set forth in ESL's Local Rule 56 statement, defendant's motion may be granted on this basis alone, I have nonetheless carefully reviewed all inferences that reasonably may be drawn from the facts in the light most favorable to plaintiff.

2. The Order provided, in relevant part:

Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS PLAINTIFF ASSERTS IN HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF SHE DOES NOT RESPOND TO THIS MOTION by filing her own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.

In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in her complaint. Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements, which may

include plaintiff's own statements, must be in the form of affidavits. Plaintiff may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment.

Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.

Pursuant to Rules 7.1(e) and 56 of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to submit the following papers in opposition to this motion: (1) a memorandum of law, containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried. In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted.

Rule 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (emphasis in original) (quoting Fed.R.Civ.P. 56(e)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348. When perusing the record to determine whether a rational fact-finder could find for the non-moving party, however, all reasonable inferences must be drawn in favor of the non-moving party. *See Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

■■■ The general principles underlying a motion for summary judgment fully apply to discrimination actions. *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"). Although courts should be cautious about granting summary judgment in cases where motive, in-

tent or state of mind are at issue, *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Association of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

■■■ Consequently, once the moving party has met its burden, the non-moving party in a discrimination action must come forward with evidence upon which a rational fact-finder could return a verdict in his favor. *See Ellenbogen v. Projection Video Services, Inc.*, 99–CV–11046, 2001 WL 736774 (S.D.N.Y. June 29, 2001) (in responding to summary judgment motion, plaintiff alleging discrimination is not absolved "from the responsibility of producing sufficient evidence from which a reasonable juror could return a verdict in his favor"). For a plaintiff in a discrimination case to survive a motion for summary judgment, she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); she must offer "concrete particulars" to substantiate the claim. *Id.* (cited in *Duprey v. Prudential Ins. Co.*, 910 F.Supp. 879 (N.D.N.Y.1996)).

■■■ Where, as here, the plaintiff is proceeding *pro se*, the court will liberally construe the plaintiff's pleadings, and "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)(citing *Burgos v. Hopkins*, 14

F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment. *Carbonell v. Goord,* 99–CV–3208, 2000 WL 760751, *5 (S.D.N.Y. June 13, 2000).

**B. The Applicable Periods of Limitation**

From the outset, it is evident that at least some of plaintiff's claims suffer from various procedural infirmities. These procedural infirmities include that certain of her claims are untimely, or exceed the scope of her administrative charge.

It is settled that allegations of discrimination occurring more than 300 days prior to the date a charge is filed are time-barred. *See* 42 U.S.C. § 12117(a) (wherein the ADA incorporates Title VII's well-established charge-filing procedures contained within 42 U.S.C. § 2000e–5(e)(1)); *Butts v. New York Dep't of Housing Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993) (Title VII case). Because plaintiff filed her charge against ESL on September 14, 1998, her ADA claims "would normally include any incidents alleged to have occurred in the preceding 300 day period." *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). Therefore, any incidents alleged to have occurred prior to November 18, 1997 would normally be time-barred. *See id.* Yet, in her complaint, plaintiff references her dissatisfaction with her 1996 performance appraisal.

■ Because plaintiff knew about her 1996 performance appraisal score in early 1997, when it was issued to her[3], any discrimination claim Burnett had would ac-

crue at that time. *See, e.g., Harris v. City of New York,* 186 F.3d 243, 247–249 (2d Cir.1999) (discrimination claims accrue when plaintiff knew or had reason to know of the injury serving as the basis for the claim); *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994); *see also Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) ("the proper focus [in an employment discrimination case] is on the time of the discriminatory act, not the point at which the consequences of the act become painful"); *O'Malley v. GTE Serv. Corp.,* 758 F.2d 818, 820 (2d Cir.1985) ("the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision . . .").

Burnett, therefore, had 300 days from her receipt of the performance appraisal in February 1997 in which to file her charge with the EEOC. Plaintiff, however, did not file her EEOC charge until September 14, 1998, well over 300 days after she had actual knowledge of that which she now decries was a discriminatory decrease in the score she believes she deserved. Therefore, this claim is time-barred.

■ To the extent plaintiff attempts to raise claims based on events other than her failed applications for promotion in 1998, such claims suffer from the additional flaw that they exceed the scope of her administrative charge. A district court may hear only claims that are included in an EEOC charge or are based on conduct subsequent to the charge which is "reasonably related" to those alleged in the charge. *Butts v. City of New York Dep't of Housing,* 990 F.2d at 1401. " '[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a com-

---

**3.** Burnett signed her 1996 performance appraisal on February 24, 1997.

plainant could litigate a claim not previously presented to and investigated by the EEOC.'" *Id.* (citations omitted). Here, plaintiff's EEOC charge only addresses claims pertaining to the decisions not to offer her certain positions for which she applied in 1998. Any other claims necessarily exceed the scope of her charge.

The fact that plaintiff appears *pro se* does not alter the result. A *pro se* plaintiff is no more entitled to present unexhausted claims than a plaintiff who is represented by a lawyer. *See Shannon v. Ford Motor Co.,* 72 F.3d 678, 684–85 (8th Cir.1996) ("there is a difference between liberally reading a [*pro se*] claim which 'lacks specificity,' and inventing, *ex nihilo,* a claim which simply was not made" before the EEOC) (quoting *Pickney v. American Dist. Telegraph Co. of Arkansas,* 568 F.Supp. 687, 690 (E.D.Ark.1983)).

In sum, to the extent plaintiff has raised any allegations concerning anything other than her assertion that she was denied consideration for certain positions because of a perceived disability, all such claims must be dismissed. Even if such claims were not barred, however, summary judgment would still be warranted for the additional reasons stated in this decision.

## C. Plaintiff's Disability Discrimination Claim

The ADA prohibits discrimination in the hiring, advancement, or discharge of an otherwise qualified employee because of such individual's disability. 42 U.S.C. § 12112(a). Courts evaluate disability discrimination claims under the ADA using the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's*

*Honor Center v. Hicks,* 509 U.S. 502, 506–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998); *Glidden v. County of Monroe,* 950 F.Supp. 73, 75 (W.D.N.Y.1997).

### 1. Prima Facie Case

In order to establish a *prima facie* case of disability discrimination, plaintiff must show that: (1) she is "disabled" within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job; and (3) she suffered adverse employment action because of her disability. *Wernick v. Federal Reserve Bank,* 91 F.3d 379, 383 (2d Cir.1996); *see also Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–870 (2d Cir. 1998); *Kotlowski v. Eastman Kodak Co.,* 922 F.Supp. 790, 796 (W.D.N.Y.1996). "[T]he plaintiff cannot meet this burden through reliance on unsupported assertions," but "must come forward with evidence that would be sufficient to support a jury verdict in [her] favor." *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995).

To survive a summary judgment motion, plaintiff must first meet the threshold burden of establishing that she is "disabled," as that term is defined under the statute. An individual is considered disabled, within the meaning of the ADA, if she: (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C).

Burnett does not claim that she is currently disabled. Rather, she effectively contends that she was regarded as disabled. That is not the test, however. In order to prevail on her claim, she must

instead establish that she was regarded as having a physical or mental impairment that substantially limits one or more of the major life activities. Based upon the current EEOC regulations, this means that she:

(1) Has a physical or mental impairment that does not substantially limit a major life activity but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined [by the EEOC regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*).[4]

■ The EEOC has defined a "mental impairment" under the statute as:

Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(2). In the instant case, plaintiff merely states that in 1996 she suffered from "stress." Plaintiff has offered no evidence that the "stress" she experienced constituted a physical or mental impairment, nor does she even make any allegation to that effect. As a result, Burnett has not and cannot make the requisite showing pursuant to 29 C.F.R. §§ 1630.2(*l*)(1) or 1630.2(*l*)(2).

Therefore, Burnett is relegated to demonstrating that she was "treated by [ESL] as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l*)(3). Of course, to be "substantially limiting," ESL must have treated Burnett as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The EEOC defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (emphasis supplied); *Heyman, v. Queens Village Committee For Mental Health*, 198 F.3d 68, 72 (2d Cir.1999).

■ I find that there are no genuine issues of material fact here, and that ESL is entitled to summary judgment. Plaintiff has not submitted any affidavit or testimony of any medical expert to support the notion that any "stress" she may have experienced in 1996 substantially limited any major life activities. Indeed, plaintiff has neither alleged in her complaint nor contended in response to the instant motion that her condition substantially limited any major life activities. In addition, there is absolutely no documentary or other evidence that Burnett was treated in any way differently than other ESL employees. She relies virtually exclusively on her claim that Charles Henry said that she was treated differently in 1998 because she had taken a leave of absence in 1996. This

---

**4.** Although "[t]he Supreme Court has recently drawn into question the degree of deference due to the EEOC's interpretations of the term 'disability' .... [n]onetheless, until a more definite pronouncement is forthcoming, it remains the law of this Circuit that [the Second Circuit] will give weight to the EEOC's interpretations." *Muller v. Costello*, 187 F.3d 298, 313 (2d Cir.1999).

claim, however, is unsupported by any admissible testimony or other evidence; standing alone, it cannot defeat the present motion. On the other hand, the admissible evidence leads to the conclusion that plaintiff was not treated as having any impairment that substantially limited any major life activity. Even Burnett admits that she was promoted after she returned from her leave of absence.

Viewing the record in the light most favorable to plaintiff, the evidence simply shows that plaintiff was unhappy with the fact that she was not promoted as quickly as she wished, and that she attributed this to a prior leave of absence. In my view, no rational trier of fact could reasonably conclude from these facts that the benign incidents about which plaintiff complains constitute unlawful discrimination because Burnett was perceived as disabled from "stress" she experienced two years earlier. Such an inference simply cannot be sustained on these facts. Even drawing every inference in plaintiff's favor, then, she has not shown the existence of a genuine issue of fact.

### 2. *Pretext*

█ In sum, plaintiff has failed to establish a *prima facie* case. However, even generously assuming that plaintiff had set forth the necessary elements for a *prima facie* case of discrimination under the ADA, ESL has submitted ample evidence in support of its proffered, legitimate, non-discriminatory reason for taking the action

it did. Quite simply, ESL did not consider her application for the Head Teller position because she lacked the requirements for that position. Indeed, the contemporaneously drafted notes by Burnett's former supervisor, Charles Henry, that appear on plaintiff's posting application suggest precisely that. This admissible evidence was more than sufficient to rebut the presumption of discrimination that might have been raised by any possible *prima facie* case. I simply cannot see any evidence that plaintiff has proffered tending to show that ESL's stated reasons were pretextual, and her mere speculations are insufficient to establish pretext.[5] *See Duclair v. Runyon*, 1998 WL 852867, 166 F.3d 1200 (2d Cir.1998) (noting that "the Supreme Court has made clear, as have numerous opinions from this court, that the burden of persuasion—the obligation to prove his or her case—is at all times borne by the plaintiff"). Indeed, plaintiff herself concedes that "the burden of proof is on me," and that she has "very little evidence proving my case." Dkt. # 19.

That plaintiff may disagree with her supervision's decisions regarding her applications for promotions is irrelevant. Such business decisions are solely within an employer's discretion. *Visco v. Community Health Plan*, 957 F.Supp. 381, 388 (N.D.N.Y.1997) ("[a]n employer may exercise business judgment in making personnel decisions as long as they are not discriminatory"); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988) ("[e]vidence that an

---

**5.** Plaintiff offers an unauthenticated document that appears to be an internal ESL memorandum referencing a job posting policy, and which notes that "[e]ligibility requirements have been reduced to 6 months in current position and location." However, even if authentic, this memorandum merely summarizes an apparent change in procedure. Plaintiff fails to provide the actual revised policy and posting application, without which this memorandum cannot be placed in any proper context. Moreover, the memorandum is dated the month after ESL posted the Head Teller position, which contained an explicit requirement that candidates have a minimum of three to five years of experience. It alone does not establish that ESL's reasons for not offering the position to Burnett were pretextual.

employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons"); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991) ("[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions"), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

### D. Plaintiff's Retaliation Claim

In her form complaint, plaintiff checked a box marked "retaliation." Complaint, ¶ 13(h), Dkt. # 1. However, she has offered no evidence whatsoever in support of such a claim. Absent direct proof, "[t]he order and allocation of burdens of proof in retaliation cases follow that of general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green...*" *Sumner v. U.S. Postal Service*, 899 F.2d 203, 208 (2d Cir.1990) (citations omitted). To establish a *prima facie* case of retaliation, a plaintiff must show (1) "protected participation or opposition under [the ADA] known by the alleged retaliator," (2) "an employment action disadvantaging the person engaged in the protected activity," and (3) "a causal connection between the protected activity and the disadvantageous employment action." *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.1987), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995).

Drawing all factual inferences in plaintiff's favor, plaintiff has nonetheless failed to establish even a *prima facie* case of retaliation. She has not established any protected activity under the ADA that was known by ESL. In fact, she filed her charge only two days before she tendered her resignation letter. Thus, she cannot establish any causal connection between any protected activity with any disadvantageous employment action. Plaintiff's speculative and conclusory allegations are insufficient to establish pretext. In addition, inasmuch as plaintiff did not reference any retaliation claim in her administrative charge, the claim is barred due to her failure to exhaust her administrative remedies.

### CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt.# 12) is granted. The complaint is dismissed with prejudice.

IT IS SO ORDERED.