**George R. SYMEONIDIS**

v.

**PAXTON CAPITAL GROUP, INC., et al.**

**No. CIV.A. WMN–99–2170.**

United States District Court, D. Maryland.

July 15, 2002.

---

Thai H. Nguyen, Falls Church, VA, for Plaintiff.

John Paul Lynch, Gina Jun, McNamee Hosea Jernigan Kim Greenan and Walker PA, Greenbelt, MD, Matthew G. Dobson, Saul Ewing LLP, Baltimore, MD, for Defendants.

## MEMORANDUM

NICKERSON, District Judge.

Before the Court are Cross–Motions for Summary Judgment filed by Defendants Paxton Capital Group, Inc., William B. Winters, John Gibson, Robert Plummer, and Michael Winters (hereinafter "the Paxton Defendants"), Paper No. 122, and by Plaintiff, Paper No. 124.[1] The motions have been fully briefed and are ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted, and Plaintiff's motion will be denied.

## I. BACKGROUND

The history of this case is a long and tortuous one. Plaintiff is a former account representative for Defendant Paxton Capital Group, Inc. ("Paxton"), which is in the business of the marketing and sales of residential mortgages.[2] Although Plaintiff was represented by counsel for approximately the first 15 months of this litigation, he has proceeded on a *pro se* basis since then. As a *pro se* litigant, Plaintiff appears to have devoted himself to pursuing this lawsuit with persistence and determination. Over the past year and a half, Plaintiff has filed no fewer than 40 discovery-related motions, most of which-but not

---

1. A number of other, miscellaneous motions are also pending before the Court. They will be addressed *infra*.

2. Defendants William B. Winters, John Gibson, Robert Plummer, and Michael Winters are principals of Paxton.

all-were denied by Magistrate Judge Gauvey, who patiently presided over the discovery process. Indeed, it would not overstate the case to say that Plaintiff has single-handedly attempted to investigate Paxton for its alleged violations of federal and state lending laws.

Although this Court has previously summarized the facts of this case in earlier opinions, some factual background will be repeated here. Plaintiff was employed by Paxton from November 1997 until approximately May 17, 1999. From November 1997 until March 1998, Plaintiff worked as an outside sales representative, marketing and attempting to sell residential real estate mortgages in the Commonwealth of Virginia. Amended Complaint at ¶ 15. Then, in April 1998, Plaintiff began working at Paxton's Lanham, Maryland, office, selling mortgages in New York and New Jersey. *Id.* at ¶ 18. Plaintiff alleges that a series of oral and written employment contracts governed the terms of his employment.

Plaintiff alleges that Paxton failed to pay him amounts earned as commissions, failed to pay promised benefits, and failed to report his wages or withhold taxes or social security. Plaintiff also claims that Paxton engaged in deceptive and unlawful lending practices by, *inter alia,* falsely holding itself out as a licensed seller of mortgages and as a "direct lender," and by making other false representations to its employees and customers. When Plaintiff complained of these practices in a letter to Paxton's head, Mr. William B. Winters, on May 17, 1999, he was terminated from his employment on or about that same day.

Plaintiff's Amended Complaint states five causes of action against Paxton and/or the other Paxton Defendants, namely: breach of contract, fraud, fraudulent inducement to contract, failure to pay minimum wage, and wrongful termination.[3] The parties have each moved for summary judgment as to all counts.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT[4]

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its re-

---

**3.** Although not explicitly pleaded in his Amended Complaint, Plaintiff argues that he has also brought a claim for violations of various federal and state lending laws. To the extent that Plaintiff may have attempted to do so, and to the extent that this Court can decipher which laws those are, this Court determines that Plaintiff lacks standing to bring such claims. For example, Plaintiff cannot make out a claim under the federal Truth in Lending Act, 15 U.S.C. § 1640, which provides a civil right of action, but only for borrowers or debtors. See, 15 U.S.C. § 1601 (citing consumer protection as primary purpose of the legislation); *White v.*

*Arlen Realty and Devel. Corp.,* 540 F.2d 645, 649 (4th Cir.1975) (discussing standing to bring a claim under § 1640). Maryland's relevant lending laws do not appear to provide for a private right of action. See, Md.Code Ann. Fin. Inst. § 11–501, et seq.

**4.** *Pro se* pleadings are entitled to liberal construction by the court, but they must still set forth facts sufficient to withstand summary judgment. *See, King v. Cuyler,* 541 F.Supp. 1230 (E.D.Pa.1982); *Burnett v. ESL Federal Credit Union,* 198 F.Supp.2d 307 (W.D.N.Y. 2002).

spective favor." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty*, 818 F.2d at 1128 (*citing Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir.1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment—even where … both parties have filed cross motions for summary judgment") (emphasis omitted), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.*, 627 F.Supp. 170, 172 (D.Md.1985) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)). *See also*

*Federal Sav. and Loan Ins. Corp. v. Heidrick*, 774 F.Supp. 352, 356 (D.Md.1991). "[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.1983), *cert. denied*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). Both motions may be denied. *See, Shook v. United States*, 713 F.2d 662, 665 (11th Cir.1983).

## III. DISCUSSION

### 1. Breach of Contract, Fraudulent Inducement, and Fraud Claims

■ Plaintiff alleges that Defendants breached various oral · and written contracts with him, by failing to compensate· him as provided in the agreements, by "intentionally interfering with [his] attempts to earn revenues and perform his job responsibilities," by placing him in "potential legal jeopardy," and by sending his files to outside customers. Amended Complaint at ¶ 38. Plaintiff has failed, however, to support these claims with admissible evidence.

First, as to the alleged oral agreements, Plaintiff has not come forward with anything other than his own, unsworn assertions that they existed.[5] Second, although the Court record[6] contains evidence of

---

5. It is also notable that each of Plaintiff's written contracts with Paxton specify that the written agreement supercedes any earlier representations or promises, written or oral.

6. While Plaintiff's attachments submitted with his cross-motion for summary judgment ex-

ceed 1200 pages, many of the documents relevant to the instant motions were not included. When feasible, and in acknowledgment of Plaintiff's *pro se* status, the Court found such documents elsewhere in the record.

three written Employee Agreements (dated December 8, 1997, February 2, 1998, and March 8, 1999), Plaintiff has not shown how Defendants might have breached the terms of those agreements. First, the explicit provisions of all three contracts indicate that Plaintiff's files were in fact the property of Paxton. Second, although the written contracts do set forth compensation structures, determined by the number and value of loans closed per month, Plaintiff has not submitted admissible, much less comprehensible, evidence that he was not paid in compliance with those compensation structures.[7] No pay stubs or other payment records were submitted with Plaintiff's pleadings, and the documents that were attached, including records of Plaintiff's loan closings, simply do not constitute evidence of breach. Furthermore, Plaintiff has not demonstrated that actual injury resulted from the "potential legal jeopardy" he allegedly faced as a result of his employer's conduct.

Plaintiff's claims for fraud and fraudulent inducement to contract contain almost identical allegations. In essence, Plaintiff alleges that he relied, to his detriment, on false statements or representations by Defendants as to the following: (1) that Paxton was a direct lender; (2) the nature and amount of compensation in the position; (3) Paxton's relationship with another entity, First Keystone FSB, and the legality of Paxton's business practices; (4) the timing of payments to Plaintiff; (5) reimbursement for Plaintiff's out-of-pocket expenses;

(6) withholding and reporting of Plaintiff's wages. Amended Complaint at ¶¶ 47, 52.

The Court notes at the outset that the voluminous documentation supplied by Plaintiff, as well as his impassioned argumentation, convey that the Paxton Defendants may have taken part in business practices that were less than honest, forthright, or even, perhaps, legal.[8] It is also clear, however, that Plaintiff has not been able to submit sufficient, admissible evidence on each element of his claims that Defendants defrauded him. *See, Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548 (entry of summary judgment mandated against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Hundreds of pages of Paxton's flyers, faxes, and printouts of statistics on Plaintiff's loan pre-qualifications and closings, without more, are not evidence of fraud.[9] Most notably, Plaintiff has failed to create a material dispute of fact as to whether Defendants acted with the requisite scienter, *i.e.*, that they made the alleged misrepresentations to Plaintiff for the purpose of defrauding him. *See, Gross v. Sussex, Inc.*, 332 Md. 247, 630 A.2d 1156 (1993). Although the Court is by no means convinced that Paxton's actions were entirely legitimate, Plaintiff simply has not presented sufficient, admissible evidence that

---

7. In particular, the Court notes that the March 8, 1999 agreement, unlike the others, does not specify that Plaintiff will receive a monthly draw on commissions. Plaintiff nonetheless complains that he did not receive such funds in the spring of 1999.

8. Plaintiff has indicated that he has contacted various investigative and regulatory agencies about such practices, although the Court is not aware of the status of those complaints.

9. For example, one of Plaintiff's chief arguments, that Defendants fraudulently deprived him of the opportunity to close the number of loans that he expected to, cannot be supported by evidence of how few loans Plaintiff was able to close, and of Paxton's marketing instructions to Plaintiff, no matter how inadequate or misleading Plaintiff may have perceived those instructions to be.

Defendants intended to defraud him, either prior to or during his employment.

## 2. *Failure to Pay Minimum Wage*

Plaintiff also alleges that Defendants failed to fulfill their statutory obligations under federal and state law to pay him a minimum wage for work performed between April 1, 1998 through May 17, 1999. He seeks to recover those wages, pursuant to the federal minimum wage law, see 29 U.S.C. § 206 *et seq.*, and the Maryland law to the same effect, see Md.Code Ann., Labor & Empl. § 13–427. In their motion for summary judgment, Defendants offer only one argument to refute Plaintiff's claim. They assert that Plaintiff waived his right to pursue these claims when the Maryland Department of Labor, Licensing, and Regulation (MDLLR) investigated his claim and, as a result, Paxton paid Plaintiff approximately $1,700. This identical argument, however, was rejected by this Court in denying Defendants' motion to dismiss, over one year ago. *See*, Mem. & Ord. dated February 1, 2000. This Court found that there was no evidence that the MDLLR determination, nor the payment by Defendants, constituted a full and final resolution of the issue.[10] Since that ruling, Defendants have produced no further evidence on the waiver issue, and have merely reiterated their unsuccessful argument.

Plaintiff, for his part, has failed to provide this Court with admissible evidence of his claim. No work records or other documentation, nor sworn testimony, have been submitted to support Plaintiff's contention that Paxton owes him payment under the minimum wage laws. Having so found, the Court will grant summary judgment to Defendants on this claim.[11]

## 3. *Wrongful Termination*

■ The tort of wrongful termination is one exception to the principle that an at-will employee may be discharged for any reason, or no reason at all. *See Adler v. American Standard Corp.*, 291 Md. 31, 45, 432 A.2d 464 (1981). The elements of the tort are: (1) that the employee was discharged; (2) that the basis for the discharge violated some clear mandate of public policy; and (3) that there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See Shapiro v. Massengill*, 105 Md.App. 743, 764, 661 A.2d 202 (1995). Although the concept of "public policy" has no precise definition, courts have identified "legislative enactments, prior judicial decisions, [and] administrative regulations" as its chief sources. *Adler*, 291 Md. at 45, 432 A.2d 464. A recent concurring opinion in the Maryland Court of Appeals notes that Maryland courts have found a violation of a clear mandate of public policy only in limited circumstances:

> "where an employee has been fired for refusing to violate the law or the legal rights of a third party, *see Kessler v. Equity Management, Inc.*, 82 Md.App. 577, 572 A.2d 1144 (1990) (holding that firing an at-will employee for refusing to commit the tort of invasion of privacy

**10.** In fact, were the MDLLR determination letter accepted as admissible evidence in this case, that letter states that the closing of Plaintiff's claim "does not diminish the claimant's right to file suit in the appropriate court of jurisdiction." *See*, Paxton Defendants' Motion to Dismiss, Paper No. 4, at Exh. D.

**11.** Because Defendants did not argue that Plaintiff's evidence was insufficient, Plaintiff, in opposing Defendants' motion, did not have the burden of coming forward with evidence to support his claim. Plaintiff did bear such a burden in his cross-motion, however, but failed to produce evidence of minimum wage violations. The inadequacy of Plaintiff's evidence on this claim has persuaded the Court to enter summary judgment for Defendants on grounds other than those argued in their pleadings.

constitutes wrongful discharge), and where an employee has been terminated for exercising a specific legal right or duty. *See Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 588 A.2d 760 (1991) (holding that it is contrary to a clear mandate of public policy for an employer to discharge an employee for seeking legal redress against a co-worker for sexual harassment) . . . .".

*Wholey v. Sears Roebuck*, 370 Md. 38, 803 A.2d 482, 501 (2002) (Raker, J. and Wilner, J., concurring).

■ It is well-established that an employee who is discharged in violation of public policy may not pursue a wrongful termination claim if there is another civil remedy available to him. *See, Chappell v. Southern Maryland Hospital*, 320 Md. 483, 493, 578 A.2d 766 (1990); *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 626, 561 A.2d 179 (1989).

Plaintiff contends that his discharge violated public policy because it was in direct response to his May 17, 1999 letter to William B. Winters, which set forth his concerns as to (1) Paxton's alleged failure to properly compensate him, pay his benefits, and withhold and report taxes; (2) Paxton's alleged failure to process loans generated by Plaintiff; (3) Paxton's alleged use of fraudulent tactics in the marketing and closing of loans; (4) Paxton's alleged misrepresentation of itself as a licensed lender and/or affiliate of First Keystone FSB, in violation of state and federal lending laws; and (5) alleged racial and ethnic discrimination in Paxton's lending practices. *See,* Pl.'s Mot. for Default, Paper No. 51, at Exh. Z. The letter asked for a written response that would either correct the situation or provide Plaintiff with "adequate assurance" that he would not be held liable for what he believed to be the company's illegal activity. *Id.* Defendants provided no written response,[12] and they concede that Plaintiff was terminated on or about the same day that he wrote the May 17, 1999 letter.[13]

■ As a threshold matter, Plaintiff is precluded from basing his wrongful termination claim on allegations that he was fired in response to (1) complaining about Paxton's failure to pay minimum wage, and (2) complaining about Paxton's failure to pay compensation due to him. Other civil remedies are available to Plaintiff for these alleged wrongs; indeed, he has pursued those remedies, albeit unsuccessfully, in his breach of contract and minimum wage claims in this lawsuit. *See, Chappell*, 320 Md. at 493, 578 A.2d 766 (wrongful discharge tort remedy precluded when other civil remedies available to plaintiff). Plaintiff's allegations regarding Paxton's violations of state and federal lending laws, however, do not fall prey to this rule.

■ The issue before this Court, therefore, is whether Maryland recognizes a public policy mandate regarding the reporting of suspected criminal and other illegal activity to superiors, such that the discharge of an at-will employee for such would be unlawful.[14] Just last month, this

---

**12.** The record contains no evidence of any verbal response by Defendants, either.

**13.** Earlier in this lawsuit, Defendants maintained that Plaintiff had voluntarily ceased employment. In their summary judgment pleadings, Defendants appear to have abandoned that position.

**14.** This question was not raised by Defendants in their pleadings. Rather, Defendants

focused on three arguments which appear to be entirely misplaced. First, Defendants assert that Plaintiff was an at-will employee. While this is true, it ignores the very existence of the wrongful termination tort, which is itself an exception to the general rule of at-will employment. Second, Defendants argue that Plaintiff does not meet certain statutory requirements under 18 U.S.C. § 1031, a provision which creates a private right of action for employees who are discharged because of

question was examined and answered in the negative by the Maryland Court of Appeals, in *Wholey v. Sears Roebuck*, 370 Md. 38, 803 A.2d 482. In *Wholey*, the plaintiff had been employed by Sears as a security officer. In the course of his employment, the plaintiff observed a store manager engaged in suspicious behavior, including possible theft of merchandise. With the approval of his superiors, the plaintiff investigated the manager more thoroughly, but was subsequently told to cease doing so. Several weeks later, the plaintiff was fired. In a trial on his claim of wrongful discharge, the jury found in favor of the plaintiff. The Court of Special Appeals reversed, however, holding that, as a matter of law, no clear mandate of public policy was implicated in the plaintiff's discharge. *See, Sears Roebuck v. Wholey*, 139 Md.App. 642, 660, 779 A.2d 408 (2001).

The Maryland Court of Appeals affirmed. The court held that, "terminating employment on the grounds that the employee (as a victim or witness) gave testimony at an official proceeding or reported a suspected crime to the appropriate law enforcement or judicial officer is wrongful and contrary to public policy." *Wholey*, 370 Md. 38, 803 A.2d 482, 494–95. In so holding, the court emphasized that to qualify for this public policy exception to at-will employment, a discharged employee may "not merely investigate suspected wrongdoing and discuss that investigation with co-employees or supervisors." *Id.* Accordingly, the court held that the plaintiff in

*Wholey* did not state a claim for wrongful termination, because he had been fired after reporting his suspicions to superiors, not external authorities.

The Court of Appeals grounded its decision in Maryland statutes creating a criminal offense, but no civil liability, for a person who harms or injures another's person or property in retaliation for reporting a crime. *See,* Md.Code Art. 27, § 762 (1957, 1996 Repl.Vol., 2001 Supp.). In a survey of that statutory provision, as well as other Maryland laws affording protection to "whistle-blowers," the court noted that the legislation protects employees only when the suspected activity of employers is reported externally. *Wholey*, 370 Md. 38, 803 A.2d 482, 496–97. Therefore, although the court recognized that some jurisdictions do not differentiate between internal and external whistle-blowing, the court refused to follow suit, stating that "the public policy mandates in this State must be based on some discernible principle of law as articulated by the Legislature or the courts." *Id.* at 496 n. 15.

In the case at bar, there is no evidence that Plaintiff reported his suspicion of Paxton's wrongdoing to any external authorities before he was terminated.[15] Like Mr. Wholey, Plaintiff took his concerns to a superior, who then terminated him. Accordingly, Plaintiff cannot avail himself of the wrongful termination tort. To decide otherwise would directly contradict the Court of Appeals' holding.

their actions in furtherance of a prosecution against their employers for fraud against the United States government. How Defendants concluded that this statute is relevant to the instant action is not apparent to the Court. Finally, Defendants contend that Plaintiff has presented no evidence that he was asked to participate in any illegal lending activities, or that he was terminated for his refusal to do so. Since this Court has concluded that

Plaintiff has not stated a violation of a clear mandate of public policy, the sufficiency of Plaintiff's evidence need not be addressed.

**15.** The only mention of external reporting in the May 17, 1999 letter is a threat to complain to authorities about Paxton's alleged failure to pay wages. This, of course, does not suffice to rescue Plaintiff's case from the *Wholey* decision.

■ As a final matter, the Court notes that Plaintiff is also precluded from claiming wrongful termination on the ground that he was fired for refusing to commit an unlawful act, i.e., continuing to participate in Defendants' allegedly illegal mortgage business. Maryland courts have found that employees may not be discharged for refusing to perform an act which violates a third party's constitutionally or statutorily protected interest. These cases do not save Plaintiff's claim, however, for two reasons. First, the evidence does not demonstrate that Plaintiff refused to continue to work for Defendants; rather, Plaintiff demanded assurances that he was not in danger of incurring civil or criminal liability for his work. Second, the "refusal to act" cases in Maryland have been strictly limited to situations where the plaintiff was asked to violate firmly established, constitutionally protected rights of others. *See, Kessler,* 82 Md.App. at 590, 572 A.2d 1144 (rental agent, who refused to "snoop" through private effects of tenants, would have run afoul of "fundamental right" to privacy protected by the Constitution). Paxton's alleged wrongdoing simply did not put Plaintiff in such a position to violate the fundamental or constitutional rights of others.

### 4. *Other Miscellaneous Pending Motions*

As noted above, this case suffered from a protracted discovery period with dozens of motions requiring the Court's attention. Although almost all of them have long since been resolved, a few remain outstanding.[16] First is Plaintiff's Motion for Entry of Default as to American Free State, Paper No. 50, which argued that under Local Rule 101.2.b, default should be entered against American Free State for failure to enter appearance of new counsel within 30 days of counsel's withdrawal of appearance. In response to that motion, this Court directed Defendant American Free State to show cause within 14 days why a default should not be entered. That order was dated September 21, 2001. No response, pleading, or any other documents have been filed by American Free State since then. Accordingly, a default will be entered against American Free State as to the claim against it (Count II of the Amended Complaint).[17]

Also pending is Plaintiff's Motion to Stay or Set Aside the Court's December 5, 2001 Ruling, Paper No. 89. In the ruling to which the motion refers, this Court granted a motion to dismiss filed by First Keystone Bank and other Defendants who were principals of the bank. Nothing in Plaintiff's motion, however, alters this Court's conclusion that dismissal of those Defendants, with prejudice, was proper, as the complaint failed to state a claim upon which relief could be granted. Accordingly, the motion will be denied in its entirety.[18]

Finally, before the Court is Plaintiff's "Motion Verifying Probable Cause of Fraud to this Honorable Court and Verification of the Counterfeit Documents," Pa-

---

**16.** Paper No. 56, docketed as "Plaintiff's Motion Verifying Proper Service of [Keystone Defendants]" is, in fact, not a motion, in that it requests no relief, and shall be treated as an affidavit. To the extent that it could be treated as a motion, it will be denied as moot.

**17.** The claim against American Free State is now the only remaining claim in this lawsuit. The Court recognizes that, because damages on this claim are not a sum certain, a hearing may be required to determine the amount entered on default judgment. In this vein, the Court would ask that Plaintiff submit a letter to the Court, indicating his proposed course of action as to this Defendant.

**18.** For the same reasons, the Court will deny Plaintiff's Motion to Order the First Keystone Defendants to Remain as Defendants in this Matter, Paper No. 117, as it requests the same relief.

per No. 90. The motion refers to a document, entitled "Agency Agreement," to which Paxton and First Keystone FSB were purportedly parties. Through the discovery process, Plaintiff obtained the original of the document and submitted it to forensic testing, based on his belief that the document, or the signatures on it, was "counterfeit." In his motion, Plaintiff requests that the forensic examiner "alter, remove, and obliterate" parts of the document in order to complete testing. In opposition, Defendants point out that the forensic examiner had already altered the document by writing on it and punching pin marks into the signatures. Plaintiff did not reply to Defendants' opposition, and the Court finds insufficient cause for allowing further mutilation of the document. The motion will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Paxton Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Cross–Motion for Summary Judgment will be denied. A separate order consistent with this memorandum will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this        day of July, 2002, by the United States District Court for the District of Maryland, ORDERED:

1.   That the Motion for Summary Judgment filed by Defendants Paxton Capital Group, Inc., William B. Winters, John Gibson, Robert Plummer, and Michael Winters (Paper No. 122), is hereby GRANTED;

2.   That Plaintiff's Cross–Motion for Summary Judgment (Paper No. 124) is hereby DENIED;

3.   That Plaintiff's Motion for Entry of Default for Want of Answer or Other Defense as to Paxton Capital Group, American Free State, and for Judgment Against Paxton Capital Group and American Free State (Paper No. 50), is hereby GRANTED in part, in that a default is hereby ENTERED against Defendant American Free State Financial Company as to all claims against it;

4.   That Plaintiff's Motion Verifying Proper Service of Defendants First Keystone Federal Savings Bank, First Keystone Financial, Inc., Donald Guthrie, and Thomas Kelly (Paper No. 56) is hereby DENIED as moot;

5.   That Plaintiff's Motion to Set Aside and Motion Requesting a Stay on the December 5th, 2001, Ruling by the Honorable William M. Nickerson Until Forensic Work is Completed (Paper No. 89) is hereby DENIED;

6.   That Plaintiff's Motion Verifying Probable Cause of Fraud to this Honorable Court and Verification of the Counterfeit Documents (Paper No. 90) is hereby DENIED;

7.   That Plaintiff's Motion to Order the First Keystone Defendants to Remain as Defendants in this Matter (Paper No. 117) is hereby DENIED;  and

8.   That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to Plaintiff and all counsel of record.